**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-1290**

———————

MOUNIA ELYAZIDI,

　　　　　Plaintiff – Appellant,

　　v.

SUNTRUST BANK; MITCHELL RUBENSTEIN & ASSOCIATES, P.C., d/b/a
Rubenstein and Cogan,

　　　　　Defendants - Appellees.

———————

Appeal from the United States District Court for the District of
Maryland, at Greenbelt.　Deborah K. Chasanow, Senior District
Judge.　(8:13-cv-02204-DKC)

———————

Argued:　January 27, 2015　　　　　Decided:　March 5, 2015

———————

Before NIEMEYER, THACKER, and HARRIS, Circuit Judges.

———————

Affirmed by published opinion.　Judge Thacker wrote the opinion,
in which Judge Niemeyer and Judge Harris joined.

———————

**ARGUED:** Ernest P. Francis, ERNEST P. FRANCIS, LTD., Alexandria,
Virginia, for Appellant.　Ronald S. Canter, LAW OFFICES OF
RONALD S. CANTER, LLC, Rockville, Maryland; John Russell
Griffin, HARTMAN & EGELI, LLP, Annapolis, Maryland, for
Appellees. **ON BRIEF:** Matthew A. Egeli, HARTMAN & EGELI, LLP,
Annapolis, Maryland, for Appellee SunTrust Bank.

———————

THACKER, Circuit Judge:

Mounia Elyazidi ("Appellant") overdrew her checking account when, despite having only a few hundred dollars in the account, she cut herself a check for nearly $10,000. A debt collector, acting on behalf of the bank, took her to court in Virginia and won. Appellant, not content to pay the judgment and let the matter drop, filed this lawsuit against the bank and its lawyers (collectively, "Appellees"). Her suit alleges that Appellees violated Maryland consumer protection laws, and that the bank's lawyers violated the Fair Debt Collection Practices Act ("FDCPA"). The federal district court dismissed Appellant's suit for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. We affirm.

I.

Appellant lives in Fairfax County, Virginia. In September 2010, she opened a checking account with SunTrust Bank ("SunTrust"), a Georgia-based bank with thousands of branches and ATMs across much of the South and along the East Coast. In the course of opening the account, Appellant signed an agreement stating that her banking transactions "shall be governed by the rules and regulations for this account." J.A. 38.[1] Those rules

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

and regulations include a provision addressing the account holder's overdraft liability:

> You are liable for all amounts charged to your Account, whether by offset, overdraft, lien or fees. If we take court action or commence an arbitration proceeding against you to collect such amounts, . . . you will also be liable for court or arbitration costs, other charges or fees, and attorney's fees up to 25 percent, or an amount as permitted by law, of the amount owed to us.

Id. at 56.

As of September 15, 2010, the account held no more than a few hundred dollars. Nevertheless, Appellant cut herself a check for $9,800.[2] She cashed the check at a SunTrust branch, resulting in a sizeable overdraft.

### A.

After its own attempts to collect the money proved unsuccessful, SunTrust hired a Maryland law firm, Mitchell Rubenstein & Associates ("MR&A"),[3] to bring a debt collection suit. MR&A filed suit on SunTrust's behalf in the general

---

[2] The SunTrust branch cashed the check for this amount. In fact, though, there was a discrepancy between the number figure in the dollar box ("$9,800") and the amount stated in text below the payee line ("Nine thousand and nine hundred 00/100 dollars"). J.A. 214.

[3] The amended complaint in this suit asserts that MR&A does business under the name Rubenstein and Cogan. Court filings in the Virginia debt collection action that preceded this suit likewise refer to the firm as Rubenstein and Cogan.

district court of Fairfax County, Virginia, on June 12, 2012.
Instead of drafting a detailed complaint, MR&A utilized a
warrant in debt, a standardized pleading that the Virginia
courts make available to creditors.[4]  This standardized pleading
provides, in relevant part:

> Plaintiff(s) claim that Defendant(s) owe
> Plaintiff(s) a debt in the sum of
>
> $ _____ net of any credits, with interest at
> _____ % from date of _____ until paid,
>
> $ _____ costs and $ _____ attorney's
> fees . . . .

J.A. 25.  Appellees filled in the blanks to indicate that
Appellant owed $9,490.82, plus 6 percent interest; $58 in costs;
and $2,372.71 in attorneys' fees.

To support the warrant in debt, Appellees submitted to
the court an "Affidavit of Account," in which a SunTrust officer
affirmed that "[t]he amount of Nine thousand four hundred ninety
and 82/100 dollars ($9,490.82) plus reasonable attorney fees of
25% and the costs of this proceeding is justly due and owing
from debt to SunTrust."  J.A. 31.  In addition, MR&A submitted
its own affidavit, dated June 11, 2012, in support of the claim

---

[4] See Va. Code Ann. § 16.1-79 (authorizing civil actions "brought by warrant"); In re Faruque, No. 07-13375-SSM, 2009 WL 2211210, at *5 n.8 (Bankr. E.D. Va. July 20, 2009) (characterizing the warrant in debt as a "simplified form of process" that "does not require a detailed statement of the cause of action").

4

for attorneys' fees. In that document (the "June 2012 Revesman Affidavit"), attorney Cynthia Kaplan Revesman ("Revesman") requested "an award of 25% percent [sic] as a just and reasonable fee, which is equal to or less than the actual arrangement with client in this case." Id. at 32. Her affidavit attests that her billable rate was $250 per hour and that she spent approximately one hour preparing the warrant in debt. The affidavit further states that Revesman "will require an additional 3 hours for Court appearances and travel," and that, based on similar cases she has handled during her career, "counsel anticipates at least 20 additional hours in order to satisfy its judgment by execution." Id.

Later, in response to a court order, Appellees filed a bill of particulars outlining the allegations against Appellant. Among the exhibits accompanying this filing were two monthly statements for Appellant's checking account. Appellant's social security number appeared on both statements. When, in December 2012, Appellant's attorney complained about the exposure of his client's personal financial information, the judge agreed to have the number redacted.

The general district court entered judgment "in the sum demanded for the plaintiff on the evidence." J.A. 151. Later, at a separate hearing, counsel for SunTrust submitted an updated affidavit supporting the claim for attorneys' fees. In

this new affidavit, dated February 27, 2013, Revesman reported that she had expended approximately 13.9 hours on the case. She provided a breakdown of how she spent those hours and, based on that breakdown, calculated a billable amount of $4,025. The court -- explaining that "it's been the practice of this Court normally to award less than what [counsel] ask[s] for" -- opted to award only $2,372.71 "because I think that . . . minimally more than that was spent in this entire matter." Id. at 174-75.

B.

Appellant's response to her defeat in the collection suit was to file a complaint against SunTrust and MR&A in circuit court in Montgomery County, Maryland. Her amended complaint asserted seven claims in all, of which five are at issue in this appeal.[5] The first four counts challenged Appellees' efforts to recover attorneys' fees in the Virginia suit:

- Count I accused Appellees of violating the Maryland Consumer Debt Collection Act ("MCDCA"), which bars debt collectors from attempting to "enforce a right with knowledge that the right does not exist," Md. Code Ann., Com. Law § 14-202(8);

---

[5] Two of the claims, Counts V and VII, accused MR&A of engaging in unfair or unconscionable acts in violation of 15 U.S.C. § 1692f. The district court dismissed those counts, and Appellant has not appealed their dismissal.

6

- Count II accused SunTrust of unfair or deceptive conduct in violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law §§ 13-301(1), -408(a);

- Count III accused MR&A of making false representations in violation of the FDCPA, 15 U.S.C. § 1692e(2); and

- Count IV accused MR&A of using "unfair or unconscionable means to" collect a debt that was neither "expressly authorized by the agreement creating the debt [n]or permitted by law," in violation of the FDCPA, 15 U.S.C. § 1692f(1).

Lastly, Appellant sought to recover for the disclosure of her social security number. Specifically:

- Count VI accused MR&A of violating 15 U.S.C. § 1692f by failing to redact Appellant's social security number from the bank statements accompanying the bill of particulars.

Appellees removed the case to the United States District Court for the District of Maryland. There, SunTrust and MR&A separately filed motions to dismiss all claims. Broadly speaking, these motions argued that Appellant's amended complaint did not state a claim. In addition, MR&A argued that the Rooker-Feldman doctrine deprived the district court of subject matter jurisdiction over the FDCPA claims in Counts III and IV.

Preliminarily, the district court rejected MR&A's Rooker-Feldman argument, reasoning that Counts III and IV were

7

not barred because they do not challenge "the propriety of the [Virginia] court's order granting a fee award." Elyazidi v. SunTrust Bank, No. 13-2204, 2014 WL 824129, at *5 (D. Md. Feb. 28, 2014). Having assured itself of its jurisdiction, the court proceeded to dismiss all of Appellant's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

First, the court concluded that Counts III and IV, brought under the FDCPA, failed because the warrant in debt and accompanying affidavits did nothing more than supply an estimate of the attorneys' fees that would be due at the conclusion of the case, in compliance with Virginia state court procedure. See Elyazidi, 2014 WL 824129, at *6. Next, the court explained that Count VI could not survive because the disclosure of Appellant's social security number was, in all likelihood, a mere "oversight that was cured by redaction of the relevant documents." Id. at *7.

Finally, the district court acknowledged that, having dismissed all federal claims, it was under no obligation to consider Counts I and II, the state law claims. See Elyazidi, 2014 WL 824129, at *7 (citing 28 U.S.C. § 1367(c)(3)). Nevertheless, the court opted to exercise supplemental jurisdiction over those claims "[i]n the interest of judicial economy." Id. The court proceeded to dismiss Counts I and II

8

on the ground that the Maryland statutes "have no extraterritorial effect." Id. at *8.

## II.

On appeal, Appellees renew their argument that the district court lacked subject matter jurisdiction over Counts III and IV. The limits of subject matter jurisdiction pose a "threshold issue" that this court must investigate "before addressing the merits" of Appellant's claims. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).

Appellees argue that the Rooker-Feldman doctrine bars Counts III and IV because these counts -- both challenging MR&A's pursuit of attorneys' fees in state court -- "are premised on the theory that the state court erred when it awarded SunTrust 25% attorney's fees in the judgment." Appellees' Br. 10. Generally speaking, the Rooker-Feldman doctrine provides that jurisdiction to review state court decisions lies not with the lower federal courts, but "exclusively with superior state courts and, ultimately, the United States Supreme Court." Friedman's, Inc. v. Dunlap, 290 F.3d 191, 196 (4th Cir. 2002) (internal quotation marks omitted). However, a federal court is not stripped of its jurisdiction simply because the claim challenges conduct that was previously examined in a state court action. Rather, the restriction on the federal district courts' jurisdiction is

9

confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) (emphasis supplied); see Davani v. Va. Dep't of Transp., 434 F.3d 712, 718-19 (4th Cir. 2006).

The instant appeal poses no challenge to the Virginia court's judgment. That judgment reflected a post-trial determination that SunTrust's counsel was entitled to $2,372.71 in fees for the 13.9 hours of work put into the case. Appellant's complaint takes no issue with those figures. Her argument, rather, is that Appellees' pre-trial representations were unlawful because they insinuated that she owed money that, to that point, SunTrust's counsel had not yet earned. We hold, therefore, that her claims are independent from the Virginia court's judgment, and that the Rooker-Feldman doctrine did not bar the federal district court from hearing them.

### III.

We proceed now to the merits of Appellant's arguments in this appeal.

### A.

We begin with Counts III and IV, which allege that the Virginia warrant in debt and accompanying affidavits wrongfully

10

represented that Appellant owed $2,372.71 in attorneys' fees -- an amount exactly equal to 25 percent of Appellant's debt to SunTrust. Appellant argues that these representations were wrongful in two ways. First, she says, SunTrust's rules and regulations merely capped her liability for attorneys' fees at 25 percent. Second, she argues that she could not have owed the full 25 percent at the time Appellees filed the Virginia suit because, to that point, MR&A had not yet performed the hours of work necessary to justify the award. Count III alleges that the firm's statements were false or misleading representations in violation of 15 U.S.C. § 1692e. Count IV condemns the statements as an unfair or unconscionable means of debt collection in violation of § 1692f(1).

The district court dismissed both counts for failure to state a claim. "We review the district court's grant of a motion to dismiss de novo, accepting as true the complaint's factual allegations and drawing all reasonable inferences in favor of the plaintiff." Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 373 (4th Cir. 2012). To survive a Rule 12(b)(6) motion, the allegations must "advance the plaintiff's claim 'across the line from conceivable to plausible.'" Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Appellant, we

conclude, has failed to propel any of her claims across that line.

1.

Pursuant to 15 U.S.C. § 1692e, a debt collector[6] may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It is unlawful to make a "false representation of (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." Id. § 1692e(2). To violate the statute, a representation must be material, see Warren, 676 F.3d at 374, which is to say, it must be "important in the sense that [it] could objectively affect the least sophisticated consumer's decisionmaking." Powell v. Palisades Acquisition XVI, LLC, No. 14-1171, 2014 WL 7191354, at *7 (4th Cir. Dec. 18, 2014). Similarly, in assessing whether a debt collector's representation is misleading, we view the representation "from the vantage of the least sophisticated consumer." Russell v. Absolute Collection Servs., Inc., 763

---

[6] "It is uncontestable that the FDCPA creates a cause of action against attorneys who act as debt collectors for their false statements about the debt." Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 235 (4th Cir. 2007); see also Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 378 (4th Cir. 2006). MR&A does not dispute that it qualifies as a debt collector under the statute.

12

F.3d 385, 394 (4th Cir. 2014) (internal quotation marks omitted). Under this standard, we consider how a "naive" consumer would interpret the statement. United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 136 (4th Cir. 1996). However, we do not give credit to "bizarre or idiosyncratic interpretations"; we assume "a quotient of reasonableness and . . . a basic level of understanding and willingness to read with care." Id.

There is no denying that, as a general matter, "litigation activity is subject to the FDCPA." Sayyed v. Wolpoff & Abramson, 485 F.3d 226, 231 (4th Cir. 2007); see Heintz v. Jenkins, 514 U.S. 291, 293, 299 (1995) (holding that a car loan borrower could pursue FDCPA claims against the lender's counsel for falsely asserting in a letter that the borrower owed money for a particularly broad substitute insurance policy on the car). As always, though, we must view the allegedly false or misleading representations in context. Here, where the debt collector sought no more than applicable law allowed and explained via affidavit that the figure was merely an estimate of an amount counsel expected to earn in the course of the

13

litigation,[7] the representations cannot be considered misleading under 15 U.S.C. § 1692e(2).

The September 2010 agreement -- which Appellant signed -- authorized SunTrust to request "up to 25 percent" of any "amount owed" to the bank. J.A. 38, 56. Appellees' request for $2,372.71 in attorneys' fees fell within the 25 percent cap. The justification for requesting the maximum amount permissible under contract was supplied in the June 2012 Revesman Affidavit, which detailed the number of hours SunTrust's counsel expected to devote to the suit. The affidavit explained that the bulk of those hours would be spent endeavoring to satisfy the judgment by execution. Though Appellant's complaint alleges that this estimate had no basis in fact, Appellant's counsel conceded at oral argument that he had no evidence to support this allegation.

It is true that the standardized warrant-in-debt form uses the word "owe," id. at 30, suggesting perhaps that the

---

[7] To be clear, this opinion in no way suggests that a prayer for attorneys' fees can never present an actionable misrepresentation under the FDCPA. Some lower courts have taken that position. See, e.g., Sayyed v. Wolpoff & Abramson, LLP, 733 F. Supp. 2d 635, 648 (D. Md. 2010); Winn v. Unifund CCR Partners, No. CV 06-447-TUC-FRZ, 2007 WL 974099, at *3 (D. Ariz. Mar. 30, 2007); see also Argentieri v. Fisher Landscapes, Inc., 15 F. Supp. 2d 55, 61-62 (D. Mass. 1998) (questioning, but never deciding, whether a prayer for attorneys' fees could ever violate the FDCPA). Today's decision does not reach this issue.

14

requested attorneys' fees were presently due.  This language, however, cannot be read in isolation.  Taking the June 2012 Revesman Affidavit into consideration, it is abundantly clear that the prayer for attorneys' fees was an estimate of an amount the debtor would owe at the conclusion of the case.  The affidavit clarifies that SunTrust's counsel was simply "request[ing] an award of 25% percent [sic] as a just and reasonable fee."  J.A. 32 (emphasis supplied).  It further explains that SunTrust's counsel had spent one hour on the case to date, and that counsel anticipated spending at least 23 more hours pursuing and executing a judgment in SunTrust's favor. Under the circumstances, any consumer -- no matter how sophisticated -- should have understood the nature of Appellees' request.

In sum, we hold that Appellees' prayer for attorneys' fees cannot, as a matter of law, be a false, deceptive, or misleading representation under § 1692e.  Accordingly, we affirm the district court's judgment that Count III fails to state a claim.

2.

Count IV, alleging a violation of 15 U.S.C. § 1692f(1), fails for similar reasons.  Section 1692f condemns the use of "unfair or unconscionable means to collect or attempt to collect any debt," and provides a non-exhaustive list of

15

proscribed conduct. 15 U.S.C. § 1692f. Subsection (1), which Appellant invokes, prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." Id. § 1692f(1).

Appellant's complaint alleges that the request for $2,372.71 in attorneys' fees was unauthorized because "neither the agreement nor applicable law permit recovery of attorney's fees for services not performed." J.A. 15. This argument has no merit. By signing the September 2010 agreement, Appellant agreed that, in the event of a "court action" to recover a debt, she would be contractually liable for "attorney's fees up to 25 percent . . . of the amount owed" to the bank. Id. at 56. Plainly, this agreement authorized SunTrust to seek attorneys' fees in the Virginia debt collection suit. Though under Virginia law an award of attorneys' fees must be "reasonable . . . under the facts and circumstances of the particular case," Lee v. Mulford, 611 S.E.2d 349, 350-51 (Va. 2005) (internal quotation marks omitted), it was entirely proper for SunTrust to estimate an appropriate fee within the limits prescribed in the September 2010 agreement. Indeed, the Commonwealth encourages plaintiffs to include such estimates when filling out the standardized warrant-in-debt form, which

16

supplies a blank space for attorneys' fees along with the spaces provided for the alleged debt and court costs. Though we draw "all reasonable inferences" in favor of the plaintiff, <u>Owens v. Balt. City State's Attorneys Office</u>, 767 F.3d 379, 388 (4th Cir. 2014) (internal quotation marks omitted), the only reasonable inference here is that Appellees sought to enforce their contractual rights in compliance with state court procedure. To claim, as Appellant does, that such activity is unfair or unconscionable under § 1692f(1) is simply not plausible. We hold, therefore, that Count IV fails to state a claim for relief.

B.

We turn now to Count VI, which asserts that MR&A's disclosure of Appellant's social security number in the bank statements accompanying the bill of particulars constituted an unfair or unconscionable means of debt collection, in violation of 15 U.S.C. § 1692f.

Section 1692f lists eight examples of unfair or unconscionable practices. These practices include: collecting money that is not expressly authorized by an agreement creating the debt, <u>see</u> 15 U.S.C. § 1692f(1); accepting a postdated check without properly notifying the drawer of when it will be deposited, or threatening to deposit it before the specified date, <u>see</u> <u>id.</u> § 1692f(2), (4); soliciting a postdated check "for

17

the purpose of threatening or instituting criminal prosecution," id. § 1692f(3); making collect calls to a debtor without disclosing the "true purpose of the communication," id. § 1692f(5); threatening nonjudicial action to dispossess the debtor of property, even though the debt collector has no present right to possess the property or no intention to take possession of it, see id. § 1692f(6)(A)-(B); "[c]ommunicating with a consumer regarding a debt by post card," id. § 1692f(7); and sending mail to a consumer via envelopes that plainly indicate the sender is a debt collector, id. § 1692f(8). What all of these enumerated activities have in common is the capacity to harass the debtor or to pressure her to pay the debt.

No doubt, the public disclosure of one's social security number can be alarming. Here, though, where the lapse occurred in the course of litigation and was easily remedied, the disclosure cannot be considered unfair or unconscionable. While, conceivably, a threat to expose one's social security number might pressure a debtor to pay off a debt, there is no allegation that Appellees ever made such a threat. Appellees simply failed to redact the number before enclosing the bank statements with the bill of particulars, an error the court promptly corrected. Though Appellant characterizes the disclosure here as "a means to extort payment," reasoning that a

18

"consumer will simply pay the debt rather than risk identity theft," J.A. 16-17, her logic is dubious at best. The record here belies her assertion that counsel would "have no alternative but to advise the consumer to pay the debt so that the consumer can avoid identity theft." Id. at 17. Appellant was not cowed into paying the debt. Rather, she simply asked the court to redact the identifying information.

In sum, we hold that, as a matter of law, the failure to redact Appellant's social security number before submitting the bank statements to the Virginia court was not an unfair or unconscionable means of debt collection under the FDCPA. The district court was correct in concluding that Count VI does not state a claim for relief, and we affirm the dismissal of that claim.

C.

The final two claims are Maryland state-law claims, both challenging Appellees' attempts to recover attorneys' fees in the Virginia suit. Count I accuses Appellees of violating the MCDCA, which provides that debt collectors may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8). Count II accuses SunTrust, exclusively, of making "false statements or representations that had the capacity, tendency, or effect of misleading consumers," J.A. 14, in violation of the

19

MCPA.   See  Md.  Code  Ann.,  Com.  Law  §§ 13-301(1),  -303 (prohibiting "unfair or deceptive trade practice[s]," including the making of any "false, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers").   The district court, choosing to exercise supplemental jurisdiction over these claims "[i]n the interest of judicial economy," dismissed the claims on the ground that neither the MCDCA nor the MCPA applies to conduct occurring "entirely" in Virginia.   Elyazidi v. SunTrust Bank, No. 13-2204, 2014 WL 824129, at *7-8 (D. Md. Feb. 28, 2014).

In  Maryland,  regulatory  statutes  are  "generally construed as not having extra-territorial effect unless a contrary legislative intent is expressly stated."   Consumer Prot. Div. v. Outdoor World Corp., 603 A.2d 1376, 1382 (Md. Ct. Spec. App. 1992); see also Chairman of Bd. of Trs. of Emps.' Ret. Sys. v. Waldron, 401 A.2d 172, 177 (Md. 1979) (stating that a Maryland statute prohibiting a state pensioner from accepting paid legal work does not prohibit the pensioner from practicing law outside of Maryland, as the state's General Assembly "has no power to regulate whom our sister jurisdictions may authorize to engage in the practice of law within their borders"); State ex rel. Gildar v. Kriss, 62 A.2d 568, 569 (Md. 1948) ("Ordinarily a

20

statute is not applicable extraterritorially, but only to acts done within the jurisdiction . . . .”). In Consumer Protection Division v. Outdoor World Corp., a Maryland appellate court concluded that the MCPA was capable of reaching at least some out-of-state activity affecting Maryland residents. Specifically, the court held that a state agency could bring administrative charges under the MCPA against an out-of-state company that allegedly made false representations in mailings to Maryland residents. 603 A.2d at 1382-83. At the same time, though, the court determined that the agency had no authority to regulate “sales practices that occur entirely within other States.” Id. at 1383. Accordingly, even where the challenged mailings enticed Maryland residents to travel out of state on false pretenses, the MCPA did not govern high-pressure sales tactics the company allegedly employed at those out-of-state locations. See id.

In an attempt to frame the challenged activities as in-state conduct, Appellant asks us to note that MR&A’s office is in Maryland and that SunTrust has “dozens” of branches there. Appellant’s Br. 26; see also J.A. 6-7. The critical point, however, is not whether Appellees conduct business in Maryland, but whether some significant portion of the challenged activity occurred there. Here, Appellant was a Virginia resident who incurred a debt in Virginia. The allegedly offensive

21

representations appeared in Virginia court documents, and any harm they might have inflicted could have occurred only in Appellant's home state of Virginia.

We likewise find no significance in Appellant's related argument -- raised, in the first instance, on appeal -- that "virtually every act that would create liability under the Maryland statutes occurred in Maryland." Appellant's Reply Br. 23. As to this, Appellant would have us note that MR&A prepared all legal documents at its Maryland office; "received" instructions from SunTrust there; and, from that office, "directed the filing" of the documents to the Virginia court. Id. These facts do not appear in Appellant's complaint, but even assuming we could infer them from the stated allegations, it would make no difference. The act of sitting in a Maryland office and drafting court documents, or taking phone calls, is not the activity that Appellant seeks to condemn in the case. Her complaint, rather is that she suffered harm when Appellees filed the allegedly offensive documents in a Virginia court and served process on her in Virginia. Appellant cannot use Maryland's consumer protection laws to gin up a lawsuit contesting this activity.

We hold that the MCDCA and MCPA have no application here. Therefore, Counts I and II fail to state a claim and were properly dismissed by the district court.

## IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.