**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-2808
_____

PAULA JENSEN,
                                   Appellant
v.

PRESSLER & PRESSLER;
MIDLAND FUNDING LLC; DOES 1-100
_____

APPEAL FROM THE UNITED STATES
DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 2-13-cv-01712)
District Judge: Honorable Susan D. Wigenton
_____

Argued
March 18, 2015
_____

Before: MCKEE, *Chief Judge*, RENDELL and FUENTES,
*Circuit Judges*

(Opinion Filed:  June 30, 2015)
_____

Sergei Lemberg, Esq. **[ARGUED]**
LEMBERG LAW, LLC
1100 Summer Street, 3rd Floor
Stamford, Connecticut 06905


*Attorney for Appellant*

Mitchell L. Williamson, Esq. **[ARGUED]**
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054

Michael J. Peters, Esq.
PRESSLER & PRESSLER, LLP
7 Entin Road
Parsippany, NJ 07054

*Attorneys for Appellee Pressler & Pressler*

Lauren M. Burnette, Esq. **[ARGUED]**
Marshall, Dennehey, Warner, Coleman & Goggin
100 Corporate Center Drive, Suite 201
Camp Hill, PA 17011

*Attorney for Appellee Midland Funding LLC*

_____

OPINION OF THE COURT
_____

McKEE, Chief Judge.

We are asked to decide whether a false statement in a communication from a debt collector to a debtor must be material in order to be actionable under a provision of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. We conclude that materiality is required, as it is subsumed within the "least sophisticated debtor" standard that has traditionally governed FDCPA claims. Because we do not find the misstatement at issue in this case material, we will affirm the District Court's grant of summary judgment to Pressler & Pressler and Midland Funding, LLC.

**I.**

The facts of this case are largely undisputed. Appellant Paula Jensen defaulted on a Bank of America credit card, and her debt was eventually sold to Appellee Midland Funding, LLC ("Midland"). Midland retained the law firm of Appellee Pressler & Pressler ("Pressler") to help collect Jensen's debt. Midland obtained a default judgment against

Jensen in the Superior Court of New Jersey in the amount of $5,965.82. Pressler then attempted to collect on that judgment by serving an information subpoena and written questions on Jensen.

The information subpoena and accompanying questions sought personal and financial information from Jensen in aid of collection. It advised that "failure to comply . . . may result in . . . arrest and incarceration." The information subpoena was issued pursuant to Rule 1:9-1 of the Rules Governing the Courts of the State of New Jersey ("New Jersey Rules"), which allows New Jersey attorneys to issue subpoenas in the name of the clerk of court. Information subpoenas issued under this rule properly bear the signature of the clerk, even though the clerk herself did not sign the subpoena and likely does not even have knowledge of it. The information subpoena here was based on the sample "form" in the Appendix to the New Jersey Rules. That form provides space for two electronic or typed signatures: one for the issuing attorney, and one for the clerk. Because Pressler sought to enforce a judgment from the Superior Court of New Jersey, the Superior Court clerk's name should have appeared on the clerk's signature line.

Instead, Pressler listed "Terrence D. Lee" on the clerk's signature line. Lee had never worked as a clerk of the Superior Court, and although he had been the County Clerk of Warren County, he left that position six years earlier. Ironically, Jensen knew Lee, and she also knew that he was not a clerk of the Superior Court. Roughly one month later, Jensen sent a letter to Pressler explaining that she was aware that Mr. Lee was not the Superior Court clerk and calling the subpoena "fraudulent." However, she also answered the questions that accompanied the information subpoena.

Thereafter, Jensen moved to vacate the state court judgment against her, but her motion was denied. She then filed a putative class action against Pressler and Midland (together, "Appellees" or "Collectors") in the U.S. District Court for the District of New Jersey, alleging a violation of § 1692e of the FDCPA, which prohibits making false, misleading, or deceptive statements in the collection of consumer debts. The District Court granted summary judgment in favor of the Collectors and denied Jensen's cross

3

motion for summary judgment. It concluded that, because the misuse of Lee's name was not a *material* false statement, there could be no liability under § 1692e. *See Jensen v. Pressler & Pressler, LLP*, No. 13-CV-01712, 2014 WL 1745042, at *5 (D.N.J. Apr. 29, 2014). This appeal followed.[1]

We have not yet had occasion to decide whether § 1692e contains a materiality requirement. For the reasons that follow, we agree with the District Court's conclusion that misstatements must be material to be actionable under § 1692e. Accordingly, we will affirm.

## II.

"This Court exercises plenary review over a district court's grant of summary judgment, applying the same standard employed by the district court." *Trinity Indus., Inc. v. Chi. Bridge & Iron Co.*, 735 F.3d 131, 134 (3d Cir. 2013). Summary judgment should only be granted where, after the close of discovery and viewing the evidence in the light most favorable to the non-moving party, the movant establishes that no genuine issue of material fact remains. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 317 (3d Cir. 2014) (citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011)).

## III.

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014). Only the fourth prong is disputed here. As noted, Jensen asserts that the subpoena violated § 1692e, the provision of the law

---

[1] The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

dealing with communications from debt collectors to debtors. She also claims that the subpoena violated two more specific subsections, § 1692e(9) and § 1692e(10). Those provisions provide:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> * * *
>
> (9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. § 1692e. Jensen argues that Pressler's use of Terrence Lee's electronic signature was a "false . . . representation" in violation of 15 U.S.C. § 1692e. Jensen is obviously correct as a factual matter, insofar as using Terrence Lee's name *is* a "false representation" in the most technical sense of the phrase. The subpoena represents Lee to be the Clerk of the Superior Court of New Jersey, but he was not the clerk and had never held that post.

However, Appellees argue that this technically false representation is not actionable under the FDCPA because it is not *material*. The Court of Appeals for the Seventh Circuit first addressed this issue in *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755 (7th Cir. 2009). There, the court adopted a "materiality" requirement for false, misleading, or deceptive statements under the FDCPA. *Id.* at 757. A number of our

5

sister Courts of Appeals subsequently adopted such a requirement. *See Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033–34 (9th Cir. 2010); *Miller v. Javitch, Block & Rathbone*, 561 F.3d 588, 596 (6th Cir. 2009). No Circuit Court that has addressed this issue has disagreed with *Hahn* and held that an immaterial false statement made during the collection of a consumer debt is actionable under the FDCPA. This dispute presents our Court with its first opportunity to decide if "false, deceptive, or misleading" statements must be material to be actionable under 15 U.S.C. § 1692e.[2]

Jensen correctly argues that the word "material" does not appear in the statute. However, that is not necessarily outcome determinative. Congress's intent guides our interpretation of statutes. *See Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). Our interpretive task begins and ends with the text of the statute unless the text is ambiguous or does not reveal congressional intent "with sufficient precision" to resolve our inquiry. *Id.* However, "[w]here the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose." *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009) (citation omitted). Jensen's reliance on the precise wording of the statute here ignores the fact that materiality requirement is simply a corollary of the well-established "least sophisticated debtor" standard, which courts have routinely applied to alleged violations of § 1692e

---

[2] The sub-parts of § 1692e comprise a non-exhaustive list of debt collection practices that violate the prohibition on false or misleading representation. *See* 15 U.S.C. § 1692e ("Without limiting the general application of the foregoing [general prohibition on false, deceptive or misleading representations], the following conduct is a violation of this section . . . ."). Most of the examples of prohibited behavior involve a statement or affirmative representation by a debt collector, but § 1692e(11) involves an omission: the failure to disclose relevant information. When we refer to § 1692e's prohibition of some statements or representations, we refer to all acts *and omissions* covered under the provision.

in order to advance the congressional intent of the FDCPA. Indeed, the parties do not dispute this standard's validity and application to this case. Yet, that standard, like the disputed materiality requirement, appears nowhere in the text of the statute. As we will explain, we are satisfied that both the least sophisticated debtor standard and the materiality requirement supply a necessary analytical framework and are consistent with the FDCPA's purpose and legislative history. Because we agree with the District Court that the Collectors did not violate § 1692e, we will affirm.

## A.

As the FDCPA is an explicitly remedial statute, passed by Congress "to eliminate abusive debt collection practices by debt collectors," 15 U.S.C. § 1692(e), "we construe its language broadly, so as to effect its purpose[,]" *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) (citation omitted). Courts routinely employ a "least sophisticated debtor" standard when deciding if debt collection violates the FDCPA. *See Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) ("We use the 'least sophisticated debtor' standard in order to effectuate 'the basic purpose of the FDCPA . . . .'" (quoting *Brown*, 464 F.3d at 454)). Although the least sophisticated debtor standard is "lower than the standard of a reasonable debtor," it "preserv[es] a quotient of reasonableness and presum[es] a basic level of understanding and willingness to read with care." *Id.* (quoting *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354–55 (3d Cir. 2000)). In so doing, it "give[s] effect to the Act's intent to 'protect[] the gullible as well as the shrewd.'" *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 298 (3d Cir. 2008) (second alteration in original) (quoting *Brown*, 464 F.3d at 453).

The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be. *See Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused."); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) ("We apply an objective test based on the

understanding of the 'least sophisticated consumer' in determining whether a collection letter violates section 1692e."). Thus, "the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008).

As noted earlier, the phrase "least sophisticated debtor" does not appear in the text of the FDCPA. Nevertheless, the standard is almost universally employed by Courts of Appeals in interpreting that law.[3] Indeed, the standard was first used more than three decades ago in 1981, a mere four years after the FDCPA was enacted. *Bingham v. Collection Bureau, Inc.*, 505 F. Supp. 864, 870-71 (D.N.D. 1981) (explaining that the standard historically used to analyze Federal Trade Commission Act claims, that courts "should look not to the most sophisticated readers but to the least[,]" should also be used in the FDCPA context (quoting

---

[3] The overwhelming majority of Courts of Appeals have employed some form of the standard, though it is sometimes referred to as the "least sophisticated consumer" or "unsophisticated debtor" standard. *See Pollard*, 766 F.3d at 103; *McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012); *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645–46 (7th Cir. 2009); *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004); *Terran v. Kaplan*, 109 F.3d 1428, 1431–32 (9th Cir. 1997); *United States v. Nat'l Fin. Serv., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Smith v. Transworld Sys.*, 953 F.2d 1025, 1028–30 (6th Cir. 1992); *Jeter v. Credit Bureau*, 760 F.2d 1168, 1175 (11th Cir. 1985). The Tenth Circuit appears to have never explicitly embraced—but certainly never disclaimed—the standard. *See Dikeman v. Nat'l Educators, Inc.*, 81 F.3d 949, 954 (10th Cir. 1996) (noting that "the [FDCPA] is . . . designed to protect such consumers as may not have the sophistication to appreciate the significance of debt collection communications"). The D.C. Circuit has apparently not had occasion to decide the issue.

*Exposition Press, Inc. v. FTC*, 295 F.2d 869, 873 (2d Cir. 1961)). The first Court of Appeals to adopt this standard did so a year later, in 1982. *See Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).

The Court of Appeals for the Eleventh Circuit has given a thorough and a compelling explanation of why the reasonable person standard is not appropriate under the FDCPA. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985). As *Jeter* explains, prior to the passage of the FDCPA, the least sophisticated debtor standard was used to analyze claims that deceptive debt collection practices violated the Federal Trade Commission Act ("FTCA"). *Id.* at 1173. At that time, regulations issued by the Federal Trade Commission under the authority of the FTCA banned deceptive practices. *See id.* However, in enacting the FDCPA, Congress explicitly found that "[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers." 15 U.S.C. § 1692(b). Thus, the *Jeter* court reasoned, "[i]t would be anomalous for the Congress, in light of its belief that existing state and federal law was inadequate to protect consumers, to have intended that the legal standard under the FDCPA be *less* protective of consumers than under the existing 'inadequate' legislation." *Jeter*, 760 F.2d at 1173–74.

Based on its legislative history, the context of its passage, and its statutory purpose, the Eleventh Circuit concluded that Congress intended courts to view FDCPA claims from the perspective of the least sophisticated debtor. *Id.* at 1175. The court reasoned that "the FDCPA's purpose of protecting [consumers] . . . is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's [communications]." *Id*. (second alteration in original) (citation omitted)). As noted, the Courts of Appeals have nearly universally embraced *Jeter*'s reasoning and employed the least sophisticated debtor standard to help effectuate the FDCPA's purpose.

**B.**

We regularly apply the least sophisticated debtor standard to claims under § 1692e. Specifically, we focus on whether a debt collector's statement in a communication to a debtor would *deceive* or *mislead* the least sophisticated debtor. *See, e.g.*, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 246 (3d Cir. 2014) *cert. denied*, 135 S. Ct. 487 (2014) (explaining that the debtor collector is "responsible for [a communication's] content and for what the least sophisticated debtor would have understood from it"); *Rosenau*, 539 F.3d at 223 (determining whether a letter was deceptive by asking "whether under the least sophisticated debtor standard, [the debt collector's] letter to [the debtor] 'can be reasonably read to have two different meanings, one of which is inaccurate'" (quoting *Quadramed*, 225 F.3d at 354)).

As quoted earlier, § 1692e prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." While it is impossible to know whether a statement is misleading or deceptive without reference to the person being misled or deceived—here, the least sophisticated debtor—the same is not true of falsity; a statement is either true or false. This presented a challenge to courts trying to view false statements through the eyes of the least sophisticated debtor. For example, in *Wahl Midland Credit Mgmt., Inc.*, 556 F.3d 643 (7th Cir. 2009), the court was asked to determine if Congress intended *false* communications to be treated differently than *misleading* or *deceptive* communications under the FDCPA. That court's explanation for uniformly analyzing the three categories of statements laid the foundation for a materiality requirement:

> Where a plaintiff alleges that a collection statement is false (rather than deceptive or misleading), Wahl contends, the only determination for the court is whether the statement is in fact false. "It is unnecessary to determine whether the unsophisticated consumer would be deceived or misled or confused by the alleged false statement." That could not be further from the truth.

10

In deciding whether collection letters violate the FDCPA, we have consistently viewed them through the eyes of the "unsophisticated consumer."

*Id.* at 645. The *Wahl* court stressed that the state of mind of the debtor is *always* relevant, and that debt collection communications must be assessed from the perspective of the least sophisticated debtor regardless of whether a communication is alleged to be false, misleading, or deceptive. *See id.* at 645–46.

In *Hahn*, the Court of Appeals for the Seventh Circuit simply expanded on *Wahl*'s reasoning. The court explained that materiality "is the upshot of [the] conclusion in *Wahl* that, '[i]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense.'" *Hahn*, 557 F.3d at 758 (second and third alterations in original) (citation omitted) (quoting *Wahl*, 556 F.3d at 646). The *Hahn* court recognized that the FDCPA was designed to give debtors reliable information so that they can make informed decisions about how to address debts, and that "by definition immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)." *Id.* at 757–58. Accordingly, a false statement is only actionable under the FDCPA if it has the potential to affect the decision-making process of the least sophisticated debtor; in other words, it must be *material* when viewed through the least sophisticated debtor's eyes.

It is therefore clear that the materiality requirement is simply another way of phrasing the legal standard we already employ when analyzing claims under § 1692e, so that the same analysis can be applied to communications containing false statements. *See Donohue*, 592 F.3d at 1034 ("[T]he materiality requirement functions as a corollary inquiry into whether a statement is likely to mislead an unsophisticated consumer."). Because we view the materiality requirement as a different way of expressing the least sophisticated debtor standard, we are satisfied that adopting a materiality requirement for claims brought under § 1692e is consistent with Congress's intent in this regard. Indeed, refusing to

11

adopt this materiality requirement would be inconsistent with decades of our own jurisprudence employing the least sophisticated debtor standard.

We realize, as we noted earlier, that the FDCPA is a remedial statute designed to curb abusive collective practices, and that it must therefore be read liberally. However, our recognition that an element of materiality is subsumed in our analytical framework does nothing to dilute the protection Congress intended. A debtor simply cannot be confused, deceived, or misled by an incorrect statement unless it is material.

## C.

We stress that this materiality standard does not turn on what an ordinary individual might reasonably understand from a debt collector's communication. *See United States v. Gaudin*, 515 U.S. 506, 509 (1995) (defining a material statement as one that has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed" (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). Because the materiality requirement is a corollary of the least sophisticated debtor standard, the relevant "decisionmaking body" here is the least sophisticated debtor. Thus, a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor. *See Elyazidi*, 780 F.3d at 234 ("To violate the statute, a representation must be material, which is to say, it must be 'important in the sense that [it] could objectively affect the least sophisticated consumer's decisionmaking.'" (alteration in original) (citation omitted)).

As our jurisprudence in this area has shown, this is not a particularly high bar. For example, we recently held that debt collectors may not, consistent with § 1692e, represent estimates of the amount that the debtor would ultimately owe as the *actual* amount owed as of the date of the communication. *McLaughlin*, 756 F.3d at 246; *see also Kaymark v. Bank of America, N.A.*, 783 F.3d 168 (3d Cir. 2015). In *McLaughlin*, we noted that the conduct plainly violated § 1692e(2), which forbids the "false representation of . . . the character, amount, or legal status of any debt." 756

12

F.3d at 246. Thus, the materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor. *See Rosenau*, 539 F.3d at 221 (noting that the least sophisticated debtor standard "prevents liability for bizarre or idiosyncratic interpretations of collection notices" (quoting *Quadramed*, 225 F.3d at 354)).

**IV.**

It is therefore obvious that the inclusion of Lee's name itself on the information subpoena here is simply not material. It could not possibly have affected the least sophisticated debtor's "ability to make intelligent decisions." *Donohue*, 592 F.3d at 1034.[4] Thus, the subpoena is not a communication that violates the prohibitions on false statements or representations in § 1692e or § 1692e(10).

Perhaps it is not surprising, given our discussion, that one of Jensen's main arguments is that the inclusion of an incorrect signature on the subpoena rendered it invalid in violation of § 1629e(9). Specifically, she argues that the subpoena falsely represented itself to be a *valid* legal document, when in fact it was an *invalid* legal document. Section 1629e(9) prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval." This argument is also without merit.

The information subpoena is not "falsely represented to be a document authorized, issued, or approved by any court

---

[4] The Collectors urge us to look not to a purely objective standard, but rather to look to what an objective debtor in Jensen's situation, who (like Jensen) knew that Lee was not the proper clerk, would have thought or done. We need not consider whether this is a proper framing of the least objective debtor standard, because the error still would not have been material under either scenario.

13

[or] official." *Id.* Under the New Jersey Rules, the clerk's signature does not verify that the clerk has seen or even knew about the document. Rather, under New Jersey practice, "[t]he preparation and sealing of a summons and most other writs is the duty of the attorney issuing the writ, who is, for that purpose, considered as the agent of the clerk of the court." *Stanley v. Great Gorge Country Club*, 803 A.2d 181, 190 (N.J. Super. Ct. Law Div. 2002) (quoting GEORGE S. HARRIS, PLEADING AND PRACTICE IN NEW JERSEY 37–38 (Rev. Ed. 1939)) (emphasis omitted); *see also* N.J. Ct. R. 1:9-1.

We are not persuaded that the information subpoena bearing Lee's name is actually invalid under New Jersey law. Though the issue does not appear to be frequently litigated, particularly in modern times, New Jersey courts have repeatedly declined to invalidate similar documents based on hypertechnical errors. *See Stanley*, 803 A.2d at 190 ("A summons is not void notwithstanding irregularities in omitting date, seal, and clerk's signature, or the attorney's address." (quoting HARRIS, *supra*, at 37–38)).

In *Hirsch et al. v. De Puy*, the New Jersey Supreme Court was faced with a "summons [that] was not dated, . . . carried no seal, and . . . although the name and title of the clerk were typed in the space usually occupied by the signature, there was no actual signature." 166 A. 720, 721 (N.J. 1933) (per curiam). The court noted that each of these errors violated state procedural rules, and it acknowledged that "there must be a point at which the accumulation of irregularities in a paper that assumes to be a writ deprives that instrument of authenticity." *Id.* However, in part because the intended recipient would know "with certainty that [the summons] is a court process," the court held that the summons was not void. *Id.* Certainly the information subpoena in this case was less error-ridden than the one at issue in *Hirsch*. Thus, it is inconceivable that the single small error here somehow made the information subpoena invalid.

Moreover, where the state courts have remarked on the importance of compliance with technical requirements, the mistake at issue had the capacity to prejudice one of the parties. For example, Jensen cites to *Cavallaro v. Jamco*

14

*Property Management*, where the court noted that "the subpoena power is a significant one which must be exercised in good faith and in strict adherence to the rules to eliminate potential abuses." 760 A.2d 353, 359 (N.J. Super. Ct. App. Div. 2000). However, there, a plaintiff's attorney's failure to include the defense attorney in communications with a deponent resulted in the disclosure of privileged materials. *See id.*; s*ee also Crescenzo v. Crane*, 796 A.2d 283, 284 (N.J. Super. Ct. App. Div. 2002) ("An attorney failed to comply with the provisions of the [New Jersey subpoena] Rule, and a doctor, improperly responding to a discovery subpoena, forwarded privileged records of his patient without notice or authorization."). There is no basis for this Court to conclude that this subpoena is actually invalid under state law. Therefore, Jensen's argument that the error is material because it misrepresents the nature of the subpoena, or that Collectors violated § 1629e(9) by mailing her an invalid subpoena, must fail.

Jensen's remaining arguments are similarly unavailing. Jensen tries to rely on a thread of federal case law holding that, in some situations, actions taken by attorneys as debt collectors are subject to more intense scrutiny than the acts of ordinary debt collectors. *See Campuzano-Burgos*, 550 F.3d at 301 ("Under the [FDCPA], attorney debt collectors warrant closer scrutiny because their abusive collection practices 'are more egregious than those of lay collectors.'" (quoting *Crossley v. Lieberman*, 868 F.2d 566, 570 (3d Cir. 1989)). This reliance is misplaced, as these cases arise out of situations where attorneys improperly use their status as attorneys to pressure or coerce debtors. *See id.*; *see also Clomon v. Jackson*, 988 F.2d 1314, 1320 (2d Cir. 1993) (explaining that the use of a lawyer's name and signature on mass mailings in that case gave "the impression that the letters were communications from an attorney" although the letters "were not 'from' [the attorney] in any meaningful sense of that word"). The Pressler attorney who signed the information subpoena in this case was not using her status to wrongly imply that legal action may be taken. She was merely issuing a valid subpoena under New Jersey Rules.

Finally, we are unmoved by Jensen's argument that summary judgment was improper because materiality is a

mixed question of fact and law that must be presented to a jury.[5]  Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  No reasonable juror could find that the mistake in this case was material.  We will therefore affirm the District Court's grant of summary judgment to the Collectors.

## V.

For the reasons set forth above, we will affirm the District Court.

---

[5] We have noted that whether contradictory language in a notice would "confuse or mislead the 'least sophisticated debtor' as to his statutory rights under the [FDCPA] to validate and dispute the debt" is a question of law. *Quadramed*, 225 F.3d at 353 n.2.  However, we recognize that at least one Court of Appeals has remarked that "materiality is a mixed question of law and fact" and explained that "often 'whether a letter is misleading raises a question of fact.'" *Gillie v. Law Office of Eric A. Jones, LLC*, No. 14-3836, 2015 WL 2151755, at *14 (6th Cir. May 8, 2015).  Though the parties dispute whether materiality is a question of fact or law, we need not decide the issue, as the Collectors would be entitled to summary judgment under either standard.