**Matthew J. HART, on behalf of plaintiff and the class defined herein, Plaintiff–Appellee.**

v.

**FCI LENDER SERVICES, INC., Defendant–Appellee.**

**No. 14–191–CV.**

United States Court of Appeals, Second Circuit.

Decided: Aug. 12, 2015.

Argued: Aug. 27, 2015.

Daniel A. Edelman (Cathleen M. Combs, Tiffany N. Hardy, on the brief), Edelman, Combs, Latturner & Goodwin, LLC, Chicago, IL, for Matthew J. Hart.

Preston L. Zarlock (Spencer L. Durland, on the brief), Phillips Lytle LLP, Buffalo, N.Y., for FCI Lender Services, Inc.

Before: WINTER, RAGGI, and CARNEY, Circuit Judges.

SUSAN L. CARNEY, Circuit Judge:

Matthew J. Hart sued FCI Lender Services, Inc. ("FCI"), his mortgage loan servicer and a debt collector, seeking damages under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.*, on behalf of himself and others similarly situated. Hart asserts that FCI violated the Act by sending him two written communications that failed to comply with FDCPA requirements that debt collectors timely provide certain notices to debtors. The first of the communications is a letter advising Hart that FCI had assumed mortgage servicing responsibilities related to Hart's mortgage loan. The second is a payment statement that FCI sent Hart some months later. The Act's notice obligations are triggered by a debt collector's "initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g.

The United States District Court for the Western District of New York (Charles J. Siragusa, *Judge*) granted FCI's motion to dismiss Hart's amended complaint for failure to state a claim, ruling principally that the letter, which the court viewed as primarily a transfer-of-servicing informational notice sent pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, was not also a communica-

tion sent "in connection with the collection of any debt" under the FDCPA. *See Hart v. FCI Lender Servs., Inc.,* No. 13–CV–6076, 2014 WL 198337 (W.D.N.Y. Jan. 15, 2014). The District Court also ruled that Hart failed to allege (adequately or otherwise) that FCI violated the FDCPA by mailing the payment statement. Finally, the District Court denied Hart leave to file a second amended complaint. On appeal, Hart challenges all three rulings.

Construing the FDCPA in light of its remedial purposes, we agree with Hart that he has adequately alleged that FCI sent the letter "in connection with the collection of [a] debt," thereby triggering the FDCPA's initial notice requirements. We accordingly vacate the judgment and remand for further proceedings, without addressing Hart's alternative arguments that the later payment statement triggered those requirements and that he should have been given a further opportunity to amend his complaint.

## BACKGROUND

We draw this narrative from the allegations of Hart's first amended complaint, *see* App. 113–32, including the documents attached to the amended complaint as exhibits, *see* Fed.R.Civ.P. 10(c). We accept Hart's well-pleaded factual allegations as true and draw all reasonable inferences in his favor. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Hart, a mortgagor, filed suit under the Act seeking damages from FCI, a corporation offering "a full spectrum of loan servicing, collection and foreclosure services locally or nationally." Am. Compl. ¶ 8. As an "integral part of its business," FCI regularly collects payments on "non[-]performing" loans—that is, loans that are in default. *Id.* ¶ 11. Hart's case rests primarily on a letter sent to him by FCI in

July 2012 (the "Letter"), after FCI assumed loan servicing obligations for Hart's mortgage loan from GMAC Mortgage, LLC ("GMAC"), the prior servicer. Hart was in default on his mortgage loan when FCI assumed servicing responsibilities.

The text of the Letter requires our close scrutiny. Entitled "Transfer of Servicing Letter" and dated "7/17/2012," it consists of one and one-half pages on FCI letterhead in the format of a signed letter, and two numbered pages of attachments. App. 123–26. In the body of the Letter, FCI notifies Hart that FCI has become his mortgage loan servicer: The text begins, "Please be advised that effective June 28, 2012 the servicing of your mortgage loan with GMAC Mortgage, LLC, secured by a Deed of Trust/Mortgage on real property, has been assigned to FCI Lender Services, Inc." App. 123. It informs Hart that his loan number has been changed and instructs that "[b]eginning June 28, 2012 you should mail your payments, including all past due payments, to FCI Lender Services, Inc....." *Id.* The Letter provides relevant timing, payment, and correspondence particulars about the transfer.

The body of the Letter also refers expressly to consumer rights conferred by section 6 of RESPA. Congress enacted RESPA to protect consumers from certain "abusive practices" that had developed "in some areas of the country" with respect to the settlement process used for residential real estate purchases and sales. 12 U.S.C. § 2601(a). RESPA obligates a new servicer of certain types of mortgage loans timely to notify the borrower of the change in servicer and to provide certain other information regarding the transfer. *See id.* § 2605(c). Reflecting (as none dispute) FCI's effort to meet its obligations under RESPA, the Letter's body identifies the effective date of the servicing transfer, provides phone numbers for both FCI and

GMAC, and further details Hart's rights under RESPA regarding (for example) the timeliness of payments sent during the transfer period and how a consumer may dispute aspects of his account.

The Letter's third page (the first page of the attachment) plays a pivotal role here. Entitled "IMPORTANT NO-TICES—PLEASE READ," it contains the following language, in the following format (insofar as reproducible here):

> *NOTICE*
>
> THIS IS AN ATTEMPT TO COL-LECT UPON A DEBT, AND ANY IN-FORMATION OBTAINED WILL BE USED FOR THAT PURPOSE
>
> **YOU HAVE THE FOLLOWING RIGHTS**
>
> THIS DEBT WILL BE ASSUMED TO BE VALID UNLESS YOU DISPUTE ITS VALIDITY WITHIN 30 DAYS AF-TER RECEIVING THIS NOTICE.
>
> IF YOU NOTIFY THIS OFFICE IN WRITING THAT THE DEBT IS DIS-PUTED WITHIN 30 DAYS, THIS OF-FICE WILL MAIL TO YOU VERIFI-CATION OF THE DEBT OR A COPY OF THE JUDGMENT AGAINST YOU. THIS OFFICE WILL PROVIDE YOU WITH THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR (IF DIFFERENT FROM THE CURRENT CREDITOR) UPON YOUR WRITTEN REQUEST WITHIN 30 DAYS.
>
> IT IS IMPORTANT THAT YOU UN-DERSTAND THAT YOU HAVE THE RIGHT TO ENFORCE THE ABOVE NOTICE.
>
> FAIR DEBT COLLECTION PRAC-TICES ACTS

The federal Fair Debt Collection prac-tices Act ... require[s] that, except un-der unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m. They may not harass you by using threats of violence or arrest or by using obscene language. Collectors may not use false or misleading statements or call you at work if they know or have reason to know that you may not receive personal calls at work. For the most part, collectors may not tell another per-son, other than your attorney or spouse, about your debt. Collectors may con-tact another person to confirm your lo-cation or enforce a judgment. For more information about debt collection activi-ties, you may contact the Federal Trade Commission at 1–877–FTC–HELP or www.ftc.gov.

App. 125(sic).[1] The attachment is not sep-arately signed, and it follows the signature line appearing on the second page of the main body of the Letter. *See* App. 124.

On February 13, 2013, Hart filed this suit against FCI as a putative class action, alleging that FCI violated the FDCPA by sending the Letter and, *inter alia,* "failing to identify the current creditor" and "mis-stat[ing] the debtor's rights," Compl. ¶ 28—information that the Act requires a debt collector to provide within five days of an "initial communication with a consumer in connection with the collection of any debt," 15 U.S.C. § 1692g. Hart sought an award of statutory damages.[2] In an amended complaint filed some months la-ter, Hart added allegations that his mort-gage was in default when it was trans-ferred to FCI for servicing and that FCI

---

**1.** The second attachment page (the fourth page of the Letter) is entitled "FCI Lender Services, Inc. PRIVACY NOTICE," App. 126, and contains information solely about FCI's privacy practices not relevant here.

**2.** The FDCPA provides for recovery of actual damages, certain statutory damages, and award of a reasonable attorney's fee upon a proven violation. *See* 15 U.S.C. § 1692k(a).

regularly and as an integral part of its business collected debts, both factors that he contended rendered FCI a "debt collector" under the Act. Hart attached as an exhibit to the amended complaint both the Letter and a December 28, 2012 payment statement (the "Payment Statement") sent by FCI to Hart and showing past-due amounts of $31,736.43, as well as the principal balance of Hart's loan and late charges due. *See* App. 128.

FCI moved under Fed.R.Civ.P. 12(b)(6) to dismiss the amended complaint for failure to state a claim, arguing principally that as a matter of law the Letter was not FCI's "initial communication ... in connection with the collection of any debt" under the FDCPA. The District Court accepted that argument and granted FCI's motion to dismiss. *See Hart*, 2014 WL 198337, at *7–8. In light of deadlines imposed by a scheduling order entered in the interim,[3] the District Court concluded further that Hart was not entitled to amend his complaint a second time to add allegations that the Payment Statement, too, gave rise to notice obligations under the Act. *See id.* at *7.

Hart timely appealed.

### DISCUSSION

Hart maintains that the Letter was sent "in connection with the collection of [a] debt." In the alternative, he contends that the amended complaint plausibly established that the Payment Statement triggered FCI's notice obligations and that the District Court abused its discretion in denying him leave to further amend his complaint to add new allegations relating to the Payment Statement. FCI responds, in essence, that: (1) the Letter was intended merely to comply with RESPA by providing certain information—that is, it was not aimed at "collect[ing] [a] debt"—and thus did not trigger the FDCPA's notice requirements; (2) Hart failed to plead adequately that the Payment Statement served as a predicate for an FDCPA violation; and (3) the District Court acted within the fair scope of its discretion in denying Hart a second opportunity to amend his complaint.

We review *de novo* a district court's grant of a defendant's motion to dismiss. *See City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 173 (2d Cir. 2011). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (internal quotation marks omitted).

### 1. *The FDCPA*

■ In passing the FDCPA, Congress aimed "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). A particular goal was to address " 'the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 89 (2d Cir.2008) (quoting S.Rep. No. 95–382, at 4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695, 1699).

---

**3.** On June 12, 2013, Magistrate Judge Jonathan W. Feldman issued a Scheduling Order directing that "[a]ll motions to ... amend the pleadings ... be filed on or before September 12, 2013," and warning that extension of the amendment deadline would be granted only upon good cause shown prior to the deadline. *See Hart*, 2014 WL 198337, at *3.

Section 1692g of Title 15 (in which the Act is codified) is entitled "Validation of debts" and requires a "debt collector" to furnish a written notice conveying certain information (the "§ 1692g notice") to a consumer debtor upon the debt collector's "initial communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a).[4] When an initial communication triggers the Act's notice obligations, the debt collector must either include a § 1692g notice in that communication or send a separate written notice to the debtor within the following five days, unless by that time the debtor has already paid the debt. *See id.* The required contents of the § 1692g notice relate both to the particular debt and to the consumer's rights under the Act: the notice must state the amount of the debt and the name of the creditor to whom the debt is owed and must inform the consumer of her right to dispute the debt's validity.[5] And to enforce these and other provisions, the FDCPA "grants a private right of action to a consumer who receives a communication that violates the Act." *Jacobson,* 516 F.3d at 91; *see* 15 U.S.C. § 1692k.

FCI concedes for purposes of this appeal that it is a "debt collector" covered by the Act. Further, the parties agree that the Letter was FCI's "initial communication" with Hart.[6] The parties disagree, however, as to whether that initial communication was "in connection with the collection of any debt," so as to give rise to § 1692g 1 notice obligations; the statute offers no definition for the phrase.

### 2. *The Letter*

FCI urges that, rather than seeking to compel Hart to pay his debt, the Letter was intended only to provide transfer-of-servicing information so as to comply with RESPA. Accordingly, FCI argues, the Letter was not sent "in connection with the collection" of Hart's debt, and FCI had no obligation to provide the complete recitation of debt-related information required by § 1692g.

The District Court accepted this construction of both the Act and the Letter. Examining the Letter, which it denom-

---

**4.** Debt collectors (within the statutory definition) must provide a § 1692g notice only to "consumers," whom the Act defines as "any natural person[s] obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). For purposes of our discussion of the FDCPA, we refer to "debtors," "consumers," and "consumer debtors" interchangeably.

**5.** Section 1692g provides:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall ... send the consumer a written notice containing—
(1) the amount of the debt;
(2) the name of the creditor to whom the debt is owed;
(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any

portion thereof, the debt will be assumed to be valid by the debt collector;
(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
15 U.S.C. § 1692g(a).

**6.** The FDCPA defines a "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

inated the "transfer-of-servicing" or "RES-PA" letter, the court reasoned that:

> [The Letter] did not attempt to *induce* [Hart] to make payment, but rather, it assumes that he will be making payments and directs *where* he should send them. The notice is informational in nature, and does not reference an amount owed or threaten to take any action if payment is not made.... [T]he document itself establishes that it was not sent in order to induce [Hart] to make a payment.

*Hart*, 2014 WL 198337, at *6–7 (emphasis in original). The court acknowledged that the third page of the Letter included certain required FDCPA notifications—including the language "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT," *see id.* at *2—but the court did not refer to that material in its analysis, *see id.* at *5–7.

■■■ This court has never addressed the scope of the FDCPA's "in connection with the collection of any debt" language. We here conclude that whether a communication is "in connection with the collection of [a] debt" is a question of fact to be determined by reference to an objective standard. Thus, in determining at the motion to dismiss stage whether the Letter triggers the Act's notice provisions, we must view the communication objectively, asking whether Hart has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent "in connection with the collection of [a] debt," rather than inquiring into the sender's subjective purpose. *See, e.g., Ruth v. Triumph P'ships*, 577 F.3d 790, 798 (7th Cir.2009) ("[T]he proper standard [for assessing whether a communication is in connection with the collection of any debt] is an objective one."); *cf. Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir.2011) (affirming award of summary judgment to defendant where a "reasonable jury could not find" that the communication was in connection with the collection of a debt). Such an inquiry is consistent with the FDCPA's goal of protecting consumers: if a consumer receiving a letter could reasonably understand it to be a communication in connection with the collection of a debt, then the consumer is entitled to the protections Congress has mandated for such communications. An objective standard that determines the apparent purpose of a communication with an eye towards a consumer's understanding also aligns with our teaching that the FDCPA is "remedial in nature, [and] its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated." *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir.2013) (internal quotation marks omitted).

The parties dispute the extent to which a communication—to be deemed made "in connection with the collection of any debt"—must be designed to induce the debtor's payment. FCI, citing standards adopted by the Sixth and Seventh Circuits, argues that such a communication "must attempt to induce the borrower to pay, not just convey information about the debt." Appellee's Br. 19; *see Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 384–85 (7th Cir.2010) (ruling that the FDCPA "does not apply to *every* communication between a debt collector and a debtor," but that a communication made "to induce" a debtor to settle her debt will trigger the statute's protections (emphasis in original)); *see also Grden*, 643 F.3d at 173 (holding that, for the FDCPA's notice provision to apply, "an animating purpose of the communication must be to induce payment by the debtor"). Hart, in turn, points out that a district court in our Circuit, in *Tocco v. Real Time Resolutions, Inc.*, 48 F.Supp.3d 535 (S.D.N.Y.2014), recently construed the phrase far more flexi-

bly when it rejected the information/inducement dichotomy and reasoned that "in connection with" is "synonymous with the phrases 'related to,' 'associated with,' and 'with respect to,' " and does not necessitate any inducement element. *Id.* at 540.

We need not delineate the outer bounds of the phrase "in connection with the collection of any debt," however, because we have no difficulty in concluding that an *attempt* to collect a debt—which we believe the Letter was—qualifies as a communication "in connection with the collection of any debt." Indeed, we see few types of communications as more obviously "in connection with the collection" of debts than attempts to collect debts. *See, e.g., Caceres v. McCalla Raymer, LLC,* 755 F.3d 1299, 1303 (11th Cir.2014) (concluding that a letter was "an attempt to collect a debt" and therefore a "communication in connection with the collection of a debt"). Moreover, in passing the FDCPA, Congress identified abusive collection attempts as primary motivations for the Act's passage. *See* S.Rep. No. 95–382, at 2. Accordingly, we think that treating an attempt to collect a debt as a communication "in connection with the collection of any debt" easily accords with the plain meaning of the broad statutory language, as well as with the Act's remedial purpose of halting abusive collection practices and giving debtors adequate information about their rights and obligations.[7]

Hart has sufficiently alleged that the Letter—viewed objectively—is an attempt to collect a debt. The Letter references Hart's particular debt, directs Hart to "mail [his] payments, including all past due payments, to FCI Lender Services, Inc." at a specified address, and refers to the FDCPA by name. App. 123, 125. More critically, it warns Hart that he must dispute the debt's validity within thirty days after receiving the Letter or his debt will "be assumed to be valid." App. 125. Finally, and most importantly, the Letter, in its two-page attachment, emphatically announces itself as an attempt at debt collection: "THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." *Id.* A reasonable consumer would credit the Letter's warning, its instruction to take action within thirty days, and its statement that it represents an attempt to collect a debt.

FCI asserts that the inclusion of RESPA-required notices in the Letter's main body demonstrates that the Letter's purpose was merely to convey the information that RESPA mandated. In support of that position, it further notes that the Letter does not discuss the current status of Hart's debt or the amount due on his loan, nor does it explicitly demand payment from Hart. But for the reasons discussed above, even if it could be ascertained that *FCI's* sole intention in sending the Letter was to comply with RESPA, we are hard put to accept that a reasonable *consumer* receiving the Letter would necessarily understand that FCI did not send the Letter in connection with the collection of her debt. And we see no reason that the Letter could not serve more than one pur-

---

7. Our decision in *Romea v. Heiberger & Assocs.,* 163 F.3d 111 (2d Cir.1998), is also instructive on this point. In *Romea,* we rejected a debt collector's argument that a particular letter was not a "communication" under § 1692g because it was a "statutory condition precedent to commencing a summary eviction proceeding" under New York law. *Id.* at 116. We held that the collector's purpose was "at least in part to induce Romea to pay the back rent she allegedly owed," and we therefore ruled it "a 'communication' under 15 U.S.C. § 1692g(a)." *Id.*

pose in any event.[8] *See, e.g., Simon v. FIA Card Servs., N.A.,* 732 F.3d 259, 267 (3d Cir.2013) ("The letter and notice were an attempt to collect the [plaintiffs'] debt. . . . The absence of an explicit payment demand does not take the communication outside the FDCPA."); *Gburek,* 614 F.3d at 385 [7th Cir.] ("[T]he absence of a demand for payment is just one of several factors that come into play in the common-sense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt.").

FCI further asserts that it is circular to conclude that the Letter's statement that it is "an attempt to collect a debt" helps render the Letter a communication "in connection with the collection of [a] debt." As FCI points out, the Act elsewhere requires debt collectors to "disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose." 15 U.S.C. § 1692e(11). FCI argues that it would be unfair to consider this statutorily-required language as evidence that the Letter is in actuality an attempt to collect a debt. But a debtor receiving the Letter has no reason to know that the language is required by the FDCPA or to believe that the language mandated by § 1692e can safely be disregarded on that basis. To the contrary, as we have highlighted, the Letter clearly announces itself an attempt to collect a debt, and its other text only emphasizes the plausibility and gravity of that announcement. We see no reason why we should not take it at its word, nor any reason that a consumer would (or indeed should) fail to credit the clear language of the document. *See, e.g., Alibrandi v. Fin.*

*Outsourcing Servs., Inc.,* 333 F.3d 82, 87–88 (2d Cir.2003) (holding that lender's agent's self-identification as a debt collector in communication to borrower was relevant to whether lender considered the loan in default). While it may be unfortunate for debt collectors that the use of a defective notice helps give rise to an obligation to provide a proper notice, the solution is to improve the defective notice.

Indeed, defective § 1692g notices pose particular dangers to consumers. Here for instance, because the Letter states that the debt will, after thirty days, be "assumed to be valid," a consumer who fails timely to act upon the Letter might believe that she has forfeited her right to challenge the accuracy of FCI's debt assessment. But under § 1692g(a)—which FCI paraphrased incompletely in the Letter—such an unchallenged debt may be assumed to be valid only by the *debt collector,* leaving the consumer free to contest the debt with the lender either directly or in the courts. *Compare* App. 125 (quoted *supra* pp. 221–22), *with* 15 U.S.C. § 1692g(a). By misleading the consumer into believing she had forfeited her right to dispute the validity of her putative debt with the lender, FCI would have frustrated a major objective of the FDCPA.

▉ Finally, FCI points out that Congress, in explaining its decision to pass the FDCPA, cited a number of aggressive practices engaged in by the debt collection industry that it particularly intended to deter by passing the Act. FCI's argument seems to be that, because Congress "targeted specific methods of collection," Appellee's Br. 19, which did not include communications such as the Letter, the Act's

---

8. Section 1692g instructs that a communication required by certain statutes, such as the Gramm–Leach–Bliley Act, 15 U.S.C. § 6801 *et seq.,* shall "not be treated as an initial communication in connection with debt collection for purposes of this section." 15 U.S.C. § 1692g(e). RESPA is not among the enumerated statutes.

notice requirements should not be triggered by the Letter. Plainly, sending a writing such as the Letter is not as aggressive as making late-night phone calls to debtors or engaging in some of the threatening practices that Congress sought to end. But that Congress cited the industry's worst practices when passing the FDCPA does not limit the statute's purview to those practices, when the text reaches well beyond. FCI provides no reason to believe that Congress did not intend the FDCPA to offer broad protection to debtors or that a debt collector's failure to provide the required § 1692g notice should be excused as no more than a *de minimis* violation, one from which the Act would not protect consumers. *See generally Vincent,* 736 F.3d at 98 (noting Congress's broad remedial intent in adopting the FDCPA).

In sum, Hart has plausibly alleged that the Letter was a "communication in connection with the collection of [a] debt." Accordingly, the District Court erred in dismissing the amended complaint and ruling as a matter of law that the Letter did not trigger § 1692g's notice requirement.

### 3. The Payment Statement

Because we conclude that Hart has stated a claim based on the Letter, we need not decide whether Hart alleged adequately that the Payment Statement also was a communication in connection with the collection of a debt. A debt collector's duty to provide a § 1692g notice arises only upon the *"initial* communication with a consumer in connection with the collection of any debt." 15 U.S.C. § 1692g(a) (emphasis added). As Hart himself notes, "[t]here is only one claim and one recovery of damages regardless of the number of collection communications sent without complying with § 1692g." Appellant's Reply Br. 17. Since Hart has plausibly alleged that the Letter was sent "in connection with the collection of any debt," any allegations relating to the Payment Statement are irrelevant in determining whether Hart stated a claim that FCI violated the Act by failing to provide a § 1692g notice.

Similarly, we need not decide whether the District Court abused its discretion in denying Hart's request to amend his complaint a second time. Hart's request to amend was expressly conditioned on a ruling that the Letter was not a communication "in connection with the collection of any debt": at oral argument before the District Court on FCI's motion to dismiss, Hart stated that he "would ask for an opportunity to replead with [the Payment Statement], if the Court were inclined to rule" that the Letter did not trigger § 1692g notice obligations. App. 191; *see also* Appellant's Br. 40 ("[T]he Court should ... hold that plaintiff's amended complaint stated a claim, or alternatively, that plaintiff should be allowed to amend.").[9] Because we conclude that Hart adequately alleged that the Letter *did* trigger FCI's notice obligations, we decline to address the District Court's denial of Hart's request to amend.

### CONCLUSION

Applying an objective standard to resolve the question, we decide that Hart

---

9. Hart requested leave to amend three months after the amendment deadline set by Magistrate Judge Feldman's Scheduling Order had passed. *See* App. 85. The Scheduling Order also warned that no extension of the deadline would be granted "except upon written application, made *prior to the cutoff date,* showing good cause for the extension." App. 87 (emphasis in original). Hart did not request an extension before the deadline passed, and he did not identify any good cause for an extension before the District Court. *See* App. 194–95.

adequately alleged that the Letter was an "initial communication ... in connection with the collection of [a] debt," so as to obligate FCI to provide Hart a § 1692g notice. The District Court thus erred in granting FCI's motion to dismiss. Because Hart sufficiently alleged that the Letter triggered FCI's notice obligations, we decline to address his request to amend his complaint to add allegations regarding the Payment Statement. Accordingly, we VACATE the District Court's judgment, and REMAND for further proceedings consistent with this opinion.