Filed 8/23/22 Scott v. Credit Consulting Services CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| CLIFTON JAMES SCOTT, Cross-complainant and Appellant, v. CREDIT CONSULTING SERVICES, INC., Cross-defendant and Respondent. | H049063 (San Benito County Super. Ct. No. CL-18-00541) |

After filing a debt collection lawsuit against Clifton James Scott, Credit Consulting Services, Inc. (CCS) stapled a typewritten note to the court-provided summons and, through a process server, served Scott with the note, summons, and complaint. Nothing in the assembled documents disclosed that CCS, not the court, had affixed the note to the summons. Scott alleged that CCS violated the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692e(9), (11))[1] and the Rosenthal Fair Debt Collection Practices Act (Civil Code §§ 1788.16-1788.17) by sending a written communication that gave a false impression as to its source, authorization, or approval, because CCS failed to disclose that the note was a communication from a debt collector and not the court. On the parties' competing motions for summary judgment, the trial

---

[1] Undesignated statutory references are to Title 15 of the United States Code.

court granted summary judgment in CCS's favor, reasoning that even the least sophisticated consumer would understand that the attachment did not come from the court. We conclude, as a matter of law on the summary judgment record, that CCS's communication is materially deceptive or misleading to the least sophisticated consumer. Accordingly, we reverse.

## I. BACKGROUND[2]

In or around February 2016, Scott received medical treatment from Hazel Hawkins Memorial Hospital. As a result, Scott incurred unpaid medical debts. Hazel Hawkins referred those debts to CCS for collection.

CCS sent Scott eight letters between July 27, 2016 and September 11, 2018. By 2017 at the latest, Scott was aware Hazel Hawkins had assigned the debt to a debt collector and had received at least one collections letter. Scott did not pay the debt.

On October 30, 2018, CCS initiated the present action by filing a collection complaint against Scott seeking recovery of the debt. The court issued a summons the same day. CCS stapled "a small yellow note . . . to the summons at a 90[-]degree angle" (the attachment). The attachment read: "If you have any questions regarding this matter, please contact: Credit Consulting Services, Inc., 201 John Street, Suite E, Salinas, CA

---

[2] We base our factual summary on the parties' separate statements of undisputed material facts, evidence admitted in conjunction with CCS's motion for summary judgment, and admissions in the parties' briefs. (See *Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1186, fn. 4.)

2

93901, 831-424-0606; outside 831 area code 1-800-679-6888."

SUMMONS
(CITACION JUDIC[IAL])

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

NOTICE TO DEFENDANT:
(AVISO AL DEMANDADO):
CLIFTON SCOTT

and Does 1 to 10, inclusive
YOU ARE BEING SUED BY PLAINTIFF:
(LO ESTA DEMANDANDO EL DEMANDA[NTE]):
CREDIT CONSULTING SERVICES, INC[.]
a California Corporation

NOTICE! You have been sued. The court may [decide against you without your being] heard unless you respond within 30 days. Read the information below..

You have 30 CALENDAR DAYS after this su[mmons and legal papers are served on you to file a written response at this court] and have a copy served on the plaintiff. A lett[er or phone call will not protect you.] Your written response must be in proper legal form if you want the court to hear your c[ase...] You can [...] find these court forms and more information [at the California Courts Online Self-]elp Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse ne[arest you. If you cannot pay the] fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you [may lose the case by default, and your] wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You m[ay want to call an attorney right away. If you do not know an attorney, you may] want to call an attorney referral service. If yo[u cannot afford an attorney, you may] be eligible for free legal services from a nonprofit legal services program. You can l[ocate these nonprofit groups at the C]alifornia Legal Services Web site (www.lawhelpcalifornia.org), the California C[ourts Online Self-Help Center (www.]courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. N[OTE: The court has a statutory lien for waived fees and costs on any settlement] or arbitration award of $10,000 or more in a c[ivil case. The court's lien must be paid before the court will dismiss the case.] AVISO! Lo han demandado. Si no responde [dentro de 30 dias, la corte puede decidir en su contra sin escuchar su version. Lea la informacion a continuacion.

Tiene 30 DIAS DE CALENDARIO despues [...] por escrito en esta corte y hacer que se ent[regue una copia al demandante. Una carta o una llamada telefonica no lo protegen.] Su respuesta por escrito tiene que estar en [formato legal correcto si desea que p]rocesen su caso en la corte. Es posible que haya un formulario que usted pueda usar p[ara su respuesta. Puede encontrar e]stos formularios de la corte y mas informacion en el Centro de Ayuda de las C[ortes de California (www.courtinfo.c]a.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le qu[ede mas cerca. Si no puede pagar la] cuota de presentacion, pida al secretario de la corte que le de un formulario de exen[cion de pago de cuotas. Si no prese]nta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podr[a quitar su sueldo, dinero y bienes si] n mas advertencia.

Hay otros requisitos legales. Es recomen[dable que llame a un abogado inme]diatamente. Si no conoce a un abogado, puede llamar a un servicio de remision a abogad[os. Si no puede pagar a un abogado,] es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un p[rograma de servicios legales sin] es du lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California [Legal Services, (www.lawhelpcalifor]nia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfh[elp/espanol/) o poniendose en conta]cto con la corte o el colegio de abogados locales. AVISO:Por ley, la corte tiene derecho a re[clamar las cuotas y los costos exento]s por imponer un gravamen sobre cualquier recuperacion de $10,000 o mas de valor re[cibida mediante un acuerdo o una c]oncesion de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte a[ntes de que la corte pueda desechar] el caso.

[Vertical text:] If you have any questions regarding this matter, please contact: Credit Consulting Services Inc., 201 John Street, Suite E, Salinas, CA 93901, 831-424-0606; outside 831 area code 1-800-679-6888 ***************************** Si tiene alguna pregunta tocante a este asunto, por favor llame a: Credit Consulting Services Inc., 201 John Street, Suite E, Salinas, CA 93901, 831-424-0606; fuera del area 1-800-679-6888

The name and address of the court is:
(El nombre y direccion de la corte es):
SUPERIOR COURT OF CALIFORN[IA]
LIMITED CIVIL
450 FOURTH STREET/HOLLISTE[R]

The name, address, and telephone number o[f plaintiff's attorney, or plaintiff without an] attorney, is:
(El nombre, la direccion y el numero de telef[ono del abogado del demandante, o del] demandante que no tiene abogado, es):
HERENDEEN & BRYAN (831) 7[...]
MacDonald Bryan/State Lic.
119 Cayuga Street/P O Box [...]
Salinas, CA 93902

CASE NUMBER:
(Numero del Caso): 18-00541

DATE: OCT 30 2018
(Fecha)

ALISHA GARCIA , Deputy (Adjunto)

(For proof of service of this summons, use [Proof of Service of Summons (form POS-010).]
(Para prueba de entrega de esta citation use [el formulario Proof of Service of Sum]mons, (POS-010)).

NOTICE TO THE PERSON SERVED: You are served
1. [x] as an individual defendant.
2. [ ] as the person sued under the fictitious name of (specify):
3. [ ] on behalf of (specify):
   under: [ ] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
          [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
          [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
          [ ] other: (specify):
4. [ ] by personal delivery on (date):

[SEAL]

EXHIBIT 1

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure par. 412.20, 465

CCS then had the assembled attachment, summons, and complaint served on Scott by substituted service.

3

Scott retained counsel and answered CCS's complaint.

Scott also filed a cross-complaint against CCS alleging two class action causes of action, one pursuant to the FDCPA and one pursuant to the Rosenthal Act. In support of each cause of action, Scott alleged that it was unlawful for CCS to send the attachment with the summons and the complaint because the attachment appeared to be a message from the court and did not contain language disclosing that it was sent by a debt collector. On January 9, 2020, the court certified a class defined to include: "All persons with addresses in California to whom [CCS] sent, or caused to be sent, a collection notice stapled to a Summons in the form of Exhibit '1' to [Scott's cross-complaint] in an attempt to collect a defaulted consumer debt, during the period October 30, 2017, through November 14, 2019[.]"

With the basic facts undisputed, the parties filed competing summary judgment motions. The trial court determined that the attachment, though a communication covered by the FDCPA and Rosenthal Act, was lawful. Accordingly, the court entered judgment in CCS's favor on Scott's cross-complaint and denied Scott's cross-request for summary judgment. Scott thereafter appealed.[3]

## II.    DISCUSSION

Scott's two causes of action, one for violation of the FDCPA and one for violation of the Rosenthal Act, are predicated on the same overlapping theories of liability: (1) the attachment appeared to be authorized, issued, or approved by the court in violation of section 1692e(9) and Civil Code sections 1788.16 and 1788.17; and (2) the attachment did not have a proper disclosure in violation of section 1692e(11) and Civil Code section 1788.17. We review de novo the trial court's determination that CCS was entitled

---

[3] The trial court only later dismissed CCS's complaint with prejudice, at CCS's request. Although Scott's appeal was therefore premature, we elect to treat the notice of appeal as filed immediately after the trial court dismissed CCS's complaint. (See Cal. Rules of Court, rule 8.308(c).)

4

to judgment on Scott's cross-complaint, and that Scott was not, as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) Under the well-settled standard for reviewing the admissible evidence before the trial court, we liberally construe the evidence in favor of the opposing party and resolve all doubts in favor of that party. (See *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

**A.** *The Statutes*

**1.** *The Fair Debt Collection Practices Act*

Under the FDCPA, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." (§ 1692e.) As a strict liability statute, the FDCPA does not require proof that the debt collector have known or intended its means to be false, deceptive, or misleading. (See *Donohue v. Quick Collect, Inc*. (9th Cir. 2010) 592 F.3d 1027, 1030 (*Donohue*).) The FDCPA enumerates 16 specific categories of actionably false, deceptive, or misleading conduct, including "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval[,]" and "[t]he failure to disclose in subsequent communications [with a debtor] . . . that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action." (§ 1692e(9), (11).) But the FDCPA expressly provides that its inclusion of these enumerated categories does not limit the range of "false, deceptive, or misleading representations or means" prohibited. (§ 1692e.)

Whether debt collection efforts are false, deceptive, or misleading for the purposes of the FDCPA requires an objective analysis of whether the least sophisticated consumer or debtor would likely be misled by a communication. (*Alborzian v. JPMorgan Chase Bank, N.A.* (2015) 235 Cal.App.4th 29, 37 (*Alborzian*); *Donohue*, *supra*, 592 F.3d at p. 1033; *Caceres v. McCalla Raymer, LLC* (11th Cir. 2014) 755 F.3d 1299, 1303

5

(*Caceres*); *Clomon v. Jackson* (2d Cir. 1993) 988 F.2d 1314, 1318; *Jensen v. Pressler & Pressler* (3d Cir. 2015) 791 F.3d 413, 415 (*Jensen*); see also *Johnson v. Enhanced Recovery Company, LLC* (7th Cir. 2020) 961 F.3d 975, 982 (*Johnson*) [similar analysis under "unsophisticated debtor" standard]; but see *Tavernaro v. Pioneer Credit Recovery, Inc.* (10th Cir. Aug. 8, 2022) __ F.4th __, 2022 WL 3153234, pp. *4-*10 (*Tavernaro*) [adopting "reasonable consumer" standard; affirming dismissal of claims where "no reasonable consumer would have been materially misled"].)[4] The least sophisticated consumer is charged with a basic level of understanding and willingness to read with care, but is of below average sophistication or intelligence and is uniformed or naïve. (*Alborzian*, 235 Cal.App.4th at p. 37; see also *Tourgeman v. Collins Financial Servs., Inc.* (9th Cir. 2014) 755 F.3d 1109, 1119 (*Tourgeman*); *Caceres*, *supra*, 755 F.3d at p. 1303.)

Several circuit courts have held that a false, deceptive, or misleading representation or means must be material to give rise to FDCPA liability. (See *Donohue*, *supra*, 592 F.3d at p. 1033; *Jensen*, *supra*, 791 F.3d at pp. 415, 417-418, 421; *Hill v. Accounts Receivable Services, LLC* (8th Cir. 2018) 888 F.3d 343, 346; *Powell v. Palisades Acquisition XVI, LLC* (4th Cir. 2014) 782 F.3d 119, 126; *Tavernaro*, *supra*, 2022 WL 3153234 at p. *4, fn. 3.) But a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor: "this is not a particularly high bar." (*Jensen*, *supra*, 791 F.3d at p. 421; but see *Tavernaro*, *supra*, 2022 WL 3153234 at pp. *8-*9 [stating, "if a reasonable consumer could understand a representation as misleading, materiality is then assessed by asking whether the

---

[4] Although we are not bound to follow the decisions of the federal circuit courts, even on federal questions, they may serve as persuasive authority. (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58.) Where the federal circuits are in conflict, we are not obliged to give greater weight to decisions of the Ninth Circuit than to decisions of other circuits. (*Elliott v. Albright* (1989) 209 Cal.App.3d 1028, 1034.)

reasonable consumer *would* have his ability to intelligently respond frustrated[,]" but holding that "a reasonable consumer would not be misled" and addressing materiality only in the alternative].)

Federal courts have diverged as to whether deception under section 1692e is a question of law or fact. (Compare *Johnson*, *supra*, 961 F.3d at p. 980-981 [Seventh Circuit generally treats questions of deception as factual rather than legal], with *Gonzales v. Arrow Financial Servs., LLC* (9th Cir. 2011) 660 F.3d 1055, 1061 [Ninth Circuit treats debt collector's liability under section 1692e as an issue of law]; *Jensen*, *supra*, 791 F.3d at p. 424, fn. 5; *Russell v. Absolute Collection Services, Inc.* (4th Cir. 2014) 763 F.3d 385, 395 [Fourth Circuit has assumed that "application of the objective least-sophisticated-consumer test to the language of a dunning letter is a question of law"].)

For purposes of framing our determination of Scott's appeal, we agree with the parties that the question of whether this written communication is misleading under section 1692e presents a question of law. " 'Questions of fact concern the establishment of historical or physical facts . . . . Questions of law relate to the selection of a rule . . . . Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual . . . . If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal . . . .' " (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 384 (*Haworth*), quoting *Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) The application of an objective standard, such as the one here, facilitates the critical consideration, in a factual context, of legal principles and their underlying values. (See *Haworth*, *supra*, 50 Cal.4th at pp. 385-386 [distinguishing subjective test, which could appropriately be characterized as factual, from an objective reasonable person test]; *Pollard v. Law Office of Mandy L. Spaulding* (1st Cir. 2014) 766 F.3d 98, 103-104

7

[unsophisticated consumer standard "captures the spirit of the statute" by protecting " 'all consumers, including the inexperienced, the untrained and the credulous' "]; see also *Alborzian*, *supra*, 235 Cal.App.4th at p. 37 [describing the attributes of the least sophisticated consumer].)  Because the test here is a circumscribed inquiry based on a hypothetical person with a defined set of attributes and deficits, the extent to which the application of the test turns on the application of experience with human affairs is muted. Moreover, treating the issue as a legal question will further the development of a uniform body of law and clarify applicable legal principles, guiding debt collectors in their efforts to comply with the FDCPA.  (See *Haworth*, *supra*, 50 Cal.4th at p. 386.)

### 2. *The Rosenthal Act*

The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts, and to require debtors to act fairly in entering into and honoring such debts." (Civ. Code, § 1788.1, subd. (b); *Best v. Ocwen Loan Servicing, LLC* (2021) 64 Cal.App.5th 568, 575 (*Best*).)  It prohibits specified conduct by a " 'debt collector' " who is attempting to collect a " 'consumer debt.' " (*Best*, *supra*, 64 Cal.App.5th at p. 575.)

The Rosenthal Act "incorporates the FDCPA, so that a violation of the FDCPA is per se a violation of the Rosenthal Act. (Civ. Code, § 1788.17.)  However, it is more extensive than the FDCPA." (*Best*, *supra*, 64 Cal.App.5th at p. 576.)

As relevant here, the Rosenthal Act also makes it "unlawful, with respect to attempted collection of a consumer debt, for a debt collector . . . to send a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued, or approved by a governmental agency or attorney when it is not." (Civ. Code, § 1788.16.)  A violation of that provision "is a misdemeanor punishable by imprisonment in the county jail not exceeding six months, or by a fine not exceeding [$2,500] or by both." (*Ibid.*)

8

**B.**    *Analysis*

For our purposes, CCS concedes that: CCS is a "debt collector" as defined in both statutes; Scott is a "consumer" as defined in the FDCPA; and the money Scott owed to Hazel Hawkins constituted a "debt" and "consumer debt," as defined in the FDCPA and the Rosenthal Act,[5] respectively. The parties dispute: (1) whether the attachment is (a) a communication (b) in connection with the collection of any debt; and (2) whether the attachment constitutes a substantive violation of the relevant statutes.

**1.**    *Communication in Connection with the Collection of Any Debt*

CCS disputes that the attachment was a "communication" and that it was " 'in connection with the collection of any debt.' " Underlying its arguments is the premise that we must examine the yellow attachment in isolation, divorced from the summons and complaint to which CCS literally attached it. We reject this premise and conclude that CCS sent the attachment in connection with debt collection.

**a.**    *Communication*

Under the FDCPA, a covered " 'communication' " is one that conveys information regarding a debt, directly or indirectly. (§ 1692a(2).) Several Circuit Courts have held that that a debt collector's message must at least imply the existence of a debt to fall within the FDCPA's purview. (See *Lavallee v. Med-1 Solutions, LLC* (7th Cir. 2019) 932 F.3d 1049, 1055-1056 [discussing decisions from the Sixth and Tenth Circuits]; *Fontana v. HOVG LLC* (5th Cir. 2021) 989 F.3d 338, 343.)

CCS argues that the attachment is not a "communication" within the meaning of either statute, on the theory that the attachment itself says nothing about the debt. But CCS did not send the attachment in a vacuum: The attachment, summons, and complaint comprised a collection of documents delivered by a process server—personally to Scott's

---

[5] Because the parties agree that the claim under Rosenthal Act claim rises or falls with the FDCPA claim, we, like the parties, focus our analysis there.

girlfriend and then by mail to Scott. CCS in the attachment specifically communicates: "If you have any questions regarding this matter, please contact: Credit Consulting Services Inc." at the number or address provided. The attachment's reference to "this matter" unmistakably signified the litigation initiated by the accompanying complaint[6] pleading Scott's indebtedness and the amount and source of indebtedness in a common-count cause of action. The attachment, by its own reference to the "matter" defined in the accompanying documents, by its provision of contact information, and by its invitation to contact CCS with "any questions" about the lawsuit, refers to the extant debt and solicits further contact regarding a debt.[7] It is therefore a "communication" as defined in section 1692a(2).

### b. *In Connection with Collection*

Under the FDCPA,[8] several federal courts have held that whether a communication is being made "in connection with" *collection* of a debt is an objective

---

[6] Service on Scott (rather than an attorney) of the complaint itself was a communication subject to section 1692e's prohibition on false, deceptive, or misleading representations or means, although as a formal pleading in a legal action, the complaint alone would have been exempt from the FDCPA's affirmative requirement to identify CCS as the sender. (*Donohue*, *supra*, 592 F.3d at 1031-1032; see also *Bock v. Pressler and Pressler, LLP* (D.N.J. 2014) 30 F.Supp.3d 283, 294, remanded on other grounds by *Bock v. Pressler & Pressler, LLP* (3d Cir. 2016) 658 Fed.Appx. 63; *In re Gunter* (Bankr. S.D. Ohio 2005) 334 B.R. 900, 905-906 [collecting cases]; § 1692e(11) [exempting "formal pleading[s] made in connection with a legal action" from the FDCPA disclosure requirements].)

[7] The cases on which CCS relies uniformly bear little resemblance to this one. At oral argument, CCS directed our particular attention to *Marx v. Gen. Revenue Corp.* (10th Cir. 2011) 668 F.3d 1174, where the court held that an employment verification form, on defendant's letterhead with an internal identification number, could not reasonably be construed to imply a debt when faxed to plaintiff's employer. (*Id.* at p. 1177.) But the correspondence there did not accompany, transmit, or incorporate by reference an indisputably covered communication—here, CCS's complaint itself.

[8] The relevant provisions of the Rosenthal Act use slightly different language. (See Civ. Code, §§ 1788.16 ["It is unlawful, with respect to an attempted collection of a

question of fact. (See *Schlaf v. Safeguard Property, LLC* (7th Cir. 2018) 899 F.3d 459, 467 (*Schlaf*); *Ruth v. Triumph Partnerships* (7th Cir. 2009) 577 F.3d 790, 798 (*Ruth*); *Hart v. FCI Lender Services, Inc.* (2d Cir. 2015) 797 F.3d 219, 225 (*Hart*); see also *Grden v. Leikin Ingber & Winters PC* (6th Cir. 2011) 643 F.3d 169, 173 (*Grden*) [element satisfied on summary judgment where a reasonable jury could not find that an animating purpose of the statements was to induce payment by the plaintiff].)

Courts have answered this question by considering "commonsense" factors, such as whether the parties' relationship arose solely from the defaulted debt, whether the communication includes a demand for payment, and the objective purpose and context of the communication. (See *Schlaf*, *supra*, 899 F.3d at p. 467; *Gburek v. Litton Loan Servicing LP* (7th Cir. 2010) 614 F.3d 380, 385-387 (*Gburek*); *Grden*, *supra*, 643 F.3d at p. 173 [for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor]; *McIvor v. Credit Control Services, Inc.* (8th Cir. 2014) 773 F.3d 909, 914 [same]; *McLaughlin v. Phelan Hallinan & Schmieg, LLP* (3d Cir. 2014) 756 F.3d 240, 245-246 ["activity undertaken for the general purpose of inducing payment constitutes debt collection activity"]; see also *Hart*, 797 F.3d at p. 226 ["We need not delineate the outer bounds of the phrase 'in connection with the collection of any debt,' . . . because we have no difficulty in concluding that an *attempt* to collect a debt . . . qualifies"]; *Caceres*, *supra*, 755 F.3d at p. 1303 [holding that letter was a communication in connection with the collection of a debt where it was an attempt to collect the debt].)

consumer debt, . . . to send a communication which"], 1788.17 ["every debt collector collecting or attempting to collect a consumer debt shall"].) Regardless, CCS concedes that it was "attempting to collect the debt from Mr. Scott" "from July 26, 2016" onward, including through litigation, which it described as a continuation of its collection efforts.

11

Beginning with context, one of the relevant commonsense factors, the communication here was literally connected to the summons to appear in the debt collection action served with the operative complaint. Moreover, the only relationship between CCS and Scott established in the record is that CCS was attempting to collect a debt that Scott incurred for medical services rendered by Hazel Hawkins. Unlike the communications at issue in the numerous decisions CCS cites,[9] the attachment was no mere "informational letter"—beyond merely providing CCS's information, it referred to the attached summons and accompanying complaint alleging Scott's liability for the debt and praying for commensurate damages and attorney fees and encouraged Scott to contact CCS with "any questions regarding this matter."

On the undisputed facts, we conclude as a matter of law that CCS sent the attachment to Scott in connection with the collection of a debt. The obvious function of the attachment was to prompt Scott to contact CCS, his litigation adversary, about the debt prompting the lawsuit. We fail to conceive of any subject other than debt collection CCS might think the communication was in connection with. The message in the attachment refers to the existence of a debt, conveys information regarding the debt, and serves the purpose of debt collection by enticing the recipient to contact the debt collector. (See *Ruth*, *supra*, 577 F.3d at pp. 798-799 ["any reasonable trier of fact would conclude that the notice was sent in connection with an attempt to collect a debt" where (1) the notice was sent in the same envelope as a collection letter that was admittedly sent

---

[9] (See *Dyer v. Select Portfolio Servicing, Inc.* (M.D. Fla. 2015) 108 F.Supp.3d 1278, 1281-1282 [letters informing borrowers of referral of their loans, providing contact information, explaining available alternatives, and directing borrowers to contact the sender immediately to discuss the options available were informational, and not covered by the FDCPA, because they did not threaten future collection proceedings]; *Walcker v. SN Commercial, LLC* (9th Cir. 2008) 286 Fed.Appx. 455, 457 [letters notifying plaintiffs that their loan had been transferred and offering plaintiffs options "for getting a fresh new start with their outstanding payments" were informational letters, rather than demands for payment under Washington law, based on an analogy to the FDCPA].)

for debt collection purposes, (2) the notice and the collection letter referred to the defendants; (3) the only relationship the defendants had with the plaintiffs arose out of a defendant's ownership of the plaintiffs' defaulted debt; such that (4) the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt]; *Gburek*, *supra*, 614 F.3d at pp. 385-387 [three letters all satisfied the "in connection with" element: (1) opening communication in attempt to collect defaulted home loan by settlement or otherwise, which included an offer to discuss repayment options; (2) letter from third-party encouraging debtor to contact debt collector to discuss debt-settlement options; and (3) letter requesting financial information from debtor to evaluate foreclosure alternatives]; *Donohue*, *supra*, 592 F.3d at pp. 1031-1032 [a complaint served directly on a consumer to facilitate debt-collection efforts is a communication subject to the requirements of section 1692e]; see also *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [there is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof].)

### 2. *Misleading Impression as to Source*

Scott argues that, to the least sophisticated consumer, the attachment would appear to have come from the court because it was both stapled to the official summons and lacked the mandatory disclosure language. CCS concedes the omission of the mandatory disclosure language in the attachment but asserts that disclosure is not required for an "innocuous note" and that even the least sophisticated consumer would understand that the attachment came from CCS, a debt collector. We conclude on this record that the omission of the mandatory disclosures in this attachment to an official court summons violated both section 1692e(11) and 1692e(9).

CCS attached to a court-issued summons what we have determined above is a communication in connection with collection of a debt. The official summons in turn

13

advised Scott that he was being sued and that, as a consequence, he was obliged to take certain actions to protect his rights. The attachment and its invitation to contact CCS with "any questions" was stapled to the summons in a position that covered over the language on the summons specifying that "a . . . phone call will not protect you" but left uncovered the court seal and the signature of the "Deputy" who issued it. By omitting the mandatory disclosure that this attachment was from CCS, a debt collector, CCS made it reasonably likely that the least sophisticated consumer would believe the suggestion to call CCS was from the court that issued the summons to which the suggestion was affixed. CSS's communication was therefore deceptive. (See *Alborzian*, *supra*, 235 Cal.App.4th at p. 37 [a debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate].)

We agree with CCS that an "innocuous note" may be included with a summons and complaint. For example, CCS has directed our attention to *Morrison v. Hosto, Buchan, Prater & Lawrence, PLLC* (E.D. Ark. Sept. 17, 2009) 2009 WL 3010917 (*Morrison*). In that case, the debt collector attached a note to the summons and complaint that read: "You have been sued. If you would like to arrange to pay the debt, please call our law firm at (800)892-1460. This may avoid the necessity of you appearing in Court or filing an Answer. When calling, please reference our file number, which is found on the top of the Court papers. Thank you for your cooperation. This is an attempt to collect a consumer debt and any information obtained will be used for that purpose. This communication is from a debt collector." (*Morrison*, 2009 WL 3010917 at p. *1.) Such an attachment does not give the appearance of coming from the court because it contains a clear and express disclosure that it was sent by a debt collector. (See *id*., 2009 WL 3010917 at pp. *1, *4.) Such a note is "innocuous" because it is inoculated through disclosure; it therefore has no residual capacity to mislead.

But, like the judge who denied CCS's special motion to strike based, in part, on Scott's likelihood of success on the merits, we do not agree that the attachment here is

14

innocuous.[10]  On review of the served documents, it would be clear to the least sophisticated consumer that CCS sued them to collect the debt specified in the complaint and, per the attachment, that they had been instructed to contact CCS, the debt collector, with any questions about the lawsuit.  Nothing about the past communications from CCS would have alerted the least sophisticated consumer that the unsigned note stapled to a court-issued summons was not likewise from the court.  We do not think it appropriate to impute to the least sophisticated consumer sufficient familiarity with court documents or service of process to be able to discern that the attachment had been attached to the summons by CCS, rather than by the court issuing the summons.

CCS relies on the Ninth Circuit's factually distinguishable decision in *Davis v. Hollins Law* (9th Cir. 2016) 832 F.3d 962 (*Davis*), where the prior reciprocal communications between the parties made the debt collector's identification of himself in a voicemail message sufficient to disclose to a debtor with a basic level of understanding that the communication was from a debt collector.  (*Id.* at p. 967.)  Unlike *Davis*, the problem here is that the attachment is provided in a context that is likely to mislead the least reasonable consumer as to the identity—and authority—of the entity sending the communication.  Of course, CCS could have placed the matter beyond doubt by disclosing that it added the attachment on the face of the document, but CCS failed to do so. (See *Morrison*, *supra*, 2009 WL 3010917 at pp. *1, *4.)

---

[10] In denying the special motion to strike, the Honorable J. Omar Rodriguez reasoned that the "fact that the yellow collection notice is not merely included with legal process, but also stapled to the Summons is key. . . . [T]he notice could appear to the least sophisticated consumer to be authorized, issued, or approved by a court[.]"  In contrast, the different trial judge granting summary judgment reasoned that "the note looked nothing like a formal court generated document, being stapled at an angle in contrasting yellow color and containing no language suggesting it was from the court. These facts militate against even an unsophisticated person being misled."  Our resolution of the legal question presented is rendered de novo, but the divergence of opinion in the trial court supports our conclusive resolution of this issue as a matter of law.

### 3.  *Materiality*

The misleading character of a covered communication is material if it could "cause the least sophisticated debtor to suffer a disadvantage in charting a course of action in response to the collection effort." (*Tourgeman*, *supra*, 755 F.3d at p. 1121; see also *Jensen*, *supra*, 791 F.3d at p. 421 [a statement is material if it is capable of influencing the decision of the least sophisticated debtor]; but see *Tavernaro*, *supra*, 2022 WL 3153234 at p. *8-*9.)  The misleading character of CCS's communication is material because the perception that the attachment is from the court and not the debt collector dilutes the carefully phrased, mandatory admonitions of the summons underneath as to the urgency of responding to the summons by answering the complaint or by consulting either legal counsel or the self-help resources of the court.  At bottom, the attachment's invitation to call CCS is precisely what the summons cautions against: "a . . . phone call will not protect you."  Both Congress and the California Legislature have expressly targeted communications that create a false impression as to their source, including specifically court or governmental agency authorization, issuance, or approval.  (See § 1692e(9); Civ. Code, § 1788.16.)  We conclude that the false official imprimatur here, in the eyes of the least sophisticated consumer, is capable of influencing them.  (See *Jensen*, *supra*, 791 F.3d at p. 421.)  CCS's cases do not involve similar facts.  (See *Donohue*, *supra*, 592 F.3d at p. 1034 [complaint that accurately reflected the total debt but contained a technically inaccurate label for at least one of two sums comprising the total debt was not materially false]; *Frank v. Autovest, LLC* (D.D.C. Sept. 30, 2019) 2019 WL 4750327, p. *5, vacated and remanded on other grounds by *Frank v. Autovest, LLC* (D.C. Cir. 2020) 961 F.3d 1185 [details about the securitization of a loan were irrelevant to debt collection action].)[11]  Intentional or not, the function of the attachment is to

---

[11] The visible prominence and position of the note—yellow against the white summons; on the front, not the back, covering the summons text that ordinarily instructs

16

encourage the consumer to direct questions to CCS rather than to file an answer in an adversarial proceeding.

In disputing materiality, CCS relies on testimony from Scott: "To me, that yellow note relates to Credit Consulting Services for the matters in this case." As a factual matter, understanding that the note "relates to" CCS is not the same as understanding that it was CCS rather than the court itself urging him to contact the entity suing him. As a matter of law, the standard of the least sophisticated debtor is an objective one not dependent on the actual comprehension or incomprehension of any specific person. "In order to prevail, it is not necessary for a plaintiff to show that she herself was confused by the communication she received; it is sufficient for a plaintiff to demonstrate that the least sophisticated consumer would be confused. In this way, the FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others." (*Jacobson v. Healthcare Fin. Servs.* (2d Cir. 2008) 516 F.3d 85, 91, fn. omitted.) Accordingly, Scott's "subjective reaction . . . is neither here nor there." (*Id.* at p. 96.)

For these reasons, we conclude that the court's entry of summary judgment in CCS's favor was error.

## C.     *Proceedings on Remand*

Through his cross-motion for summary judgment, Scott sought, among other things, judgment in his, and the certified class's, favor on both causes of action in his cross-complaint; individual awards of statutory damages under the FDCPA and Rosenthal Act; and a service award. CCS raised both procedural and substantive arguments in opposition. Having granted CCS's motion, the trial court "[n]ecessarily"

---

the defendant that "a . . . phone call will not protect you"—only compounds the misleading effect of the communication.

17

denied Scott's motion. Scott now asks us to direct the trial court to enter judgment in his favor. We decline to do so.

We agree that the trial court's denial of Scott's motion for summary judgment or, alternatively, summary adjudication of issues is within the scope of his appeal. (See *Mosley v. Pacific Specialty Insurance Co.* (2020) 49 Cal.App.5th 417, 422 (*Mosley*).) And the issues presented by Scott's cross-motion substantially overlap with the issues presented by CCS's motion. They are not, however, coterminous. Resolution of Scott's cross-motion would turn on adjudication of substantive issues not yet addressed by the trial court. (See *California DUI Lawyers Ass'n v. Department of Motor Vehicles* (2018) 20 Cal.App.5th 1247, 1265 [declining to reach substantive issues presented by cross-motions for summary judgment where the trial court had not reached those issues, deciding the motions instead on the basis of a threshold standing issue]; *Mosley*, *supra*, 49 Cal.App.5th at pp. 423-432, 435-437; see also Code Civ. Proc., § 437c, subd. (f)(1).) These consist of the adequacy of the evidence Scott submitted in support of his summary judgment motion to establish the propriety of summary judgment in favor of Scott and the class, issues relating to certain affirmative defenses pleaded by CCS, issues specific to the Rosenthal Act, and, potentially, the amount of statutory damages to be awarded Scott and the class.

In these circumstances, we deem it prudent to direct the trial court to vacate its order denying Scott's motion for summary judgment and to remand for further proceedings consistent with our determination, as a matter of law on the facts presented by CCS's summary judgment motion, that CCS's attachment to the summons, served with CCS's complaint, constitutes a "false, deceptive, or misleading representation or means in connection with the collection of any debt" within the meaning of FDCPA section 1692e, and that the misleading character of the representation or means is material under *Donohue*, *supra*, 592 F.3d at pp. 1030-1034, *Guerrero v. RJM Acquisitions LLC* (9th Cir. 2007) 499 F.3d 926, 934, and *Hahn v. Triumph Partnerships*

18

*LLC* (7th Cir. 2009) 557 F.3d 755, 758.[12]

## III.    DISPOSITION

We reverse the trial court's entry of judgment in favor of CCS and remand for further proceedings on Scott's cross-complaint, with directions to vacate the order granting CCS's motion for summary judgment and denying Scott's motion for summary judgment.  Scott shall recover his costs on appeal.

---

[12] CCS pleaded as its tenth affirmative defense that "Cross-Complainant's cross-complaint, and every cause of action alleged therein, is barred by the doctrine of materiality."

_____

LIE, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*Scott v. Credit Consulting Service, Inc.*
H049063